**TEXAS HEALTH ENTERPRISES, INC., and Tri–Star Associates, A California Limited Partnership, d/b/a Deerings West Nursing Center, Appellants,**

v.

**Sharon GENTRY, Appellee.**

**No. 08–89–00227–CV.**

Court of Appeals of Texas, El Paso.

April 4, 1990.

Rehearing Overruled May 2, 1990.

Robert E. Motsenbocker, Joel B. Locke, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Inc., Odessa, for appellants.

Robert E. White, Childs & Bishop Law Offices, Inc., Odessa, Elaine Brady, Houston, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

### OPINION

FULLER, Justice.

An employee of a nursing home recovered judgment against the nursing home for injuries incurred on the job. We affirm in part and reverse and render in part.

### FACTS

Appellee, Sharon Gentry, had worked for the Appellant nursing home for less than one month when on May 6, 1988, she claimed injury to her back while assisting one of the patients. She did not initially think the injury was severe and continued to work, finishing her shift at 10:30 p.m. The pain continued and she went to the emergency room of a local hospital some time after midnight. She was diagnosed as having "muscular low back strain" and was prescribed a pain reliever, rest, heat and limitation of activity. A job related treatment report by the examining physician authorized her immediate return to work, but with only light duty for the next two days. Appellee reported her injury the next day to Deerings and was placed on light duty for two days.

Sharon Gentry then tried to make an appointment with Dr. Zeeck, who had previously treated her for a 1985 back injury. Appellee could not obtain an immediate appointment and then she unsuccessfully sought an appointment with Dr. Martinez. As a result, Appellee then made an appointment with Dr. Driscoll for May 10 and notified Deerings of the appointment. Appellee's supervisor advised her that she must see Dr. Zeeck or Deerings would not pay her medical expenses. Appellee refused and kept her appointment with Dr. Driscoll. As a consequence, other than one pharmacy bill, Deerings did not pay Appellee's medical bills consisting of (1) $203.00 emergency room, (2) $2,128.00 due Dr. Driscoll, and (3) $412.09 for medications. Appellee brought suit in June 1988, and shortly thereafter was terminated from her job. Dr. Driscoll did not release Appellee for work until November 1988.

Appellee proceeded to trial on the following causes of action:

(1) Negligence in maintaining a dangerous premise proximately causing Appellee's injury;

(2) Breach of contract; and

(3) Deceptive trade practice under the Texas Insurance Code Ann. sec. 21.-21, by misrepresentation of worker's compensation benefits.

The jury returned a negative answer as to negligence and that finding is not challenged in this appeal. The jury found in favor of Appellee as to the cause of action on breach of contract and the assertion of deceptive practices violations under Section 16, art. 21.21 of the Tex.Ins.Code Ann. (Vernon 1981). These theories of liability turn upon the existence and import of alleged representations made to Sharon Gentry with regard to compensation benefits afforded to employees injured on the job.

## THE EVIDENCE

At the time Appellee was hired, she signed an acknowledgment that Deerings was not a subscriber to the Texas Workers' Compensation Act. Notices to that effect were also placed in three locations at the nursing home. On the other hand, Appellee was provided, at time of hiring with an Employee Handbook which listed "WORKERS' COMPENSATION" as an employee benefit. Appellee testified that she interpreted this to mean that although not a subscriber to the Texas statutory compensation system, Deerings provided equivalent benefits. She testified that in fact she was told that the company benefits were comparable to the state program.

## SYLVIA COSAS

The assistant administrator of the nursing home, Sylvia Cosas testified that the intent of the Employee Handbook in referring to "WORKERS' COMPENSATION" is to state that they have some form of compensation for on-the-job injuries, but not insurance under the state program. The nursing home compensation program pays the injured employees two-thirds of their salary during incapacity and pays the medical incident thereto. She further testified that this benefit program is provided "in exchange for going to work for Deerings" and is a part of the employment agreement. According to this witness, the nursing home did not volunteer the existence or details of the benefit program to new employees. If a specific inquiry is made, the nursing home merely states that it will send the employee to a doctor. Further details and assurances of payment are only made after an injury occurs.

In Appellee's case, the decision not to pay the benefits was made by Appellants' "Risk Manager," James T. Bounds, but the gist of Sylvia Cosas' interpretation was that the claim was refused because of Appellee's failure to see Dr. Zeeck. The Appellants' policy, which is not detailed in the Employee Handbook, requires that the injured employee be sent to Deerings' choice of a doctor, or if that is refused, to the injured employee's family doctor. Expenses incurred in seeing other physicians would only be covered upon a referral by one of the two primary choice physicians. The nursing home's physicians were at the Family Medical Clinic but Appellee was not asked to see them. The assistant administrator of the nursing home, Sylvia Cosas, required Appellee to see Dr. Zeeck because he was her treating doctor on her past back injury. However, it is questionable whether, under the Appellants' policy, that Dr. Zeeck would be considered Appellee's family doctor.

Sylvia Cosas admitted she never reviewed Dr. Driscoll's records or treatment reports concerning Appellee's injury. As to the Appellants' discriminating payment practices depending on the identity of the treating doctor, Sylvia Cosas testified:

> Usually—Well, we've never really had a problem with paying doctors. We pay, you know, *anyone* that treats one of our employees.

She was asked point blank: "When are the employees actually given this Employee Policy Handbook? She stated, "At the time of hire." This handbook sets forth the "Employee Benefits" under a title labelled as "Workers' Compensation."

## JAMES T. BOUNDS

Appellants' "Risk Manager," James T. Bounds, confirmed Sylvia Cosas' testimony, except he added a few additional details beneficial to Appellee. He stated that the inclusion of the phrase "Workers' Compensation" in the Employee Handbook is "just a term that we used." However it also seems that the labelling of his title as "Risk Manager" is also coincidentally a title that happens to be peculiar to the insurance industry and the Tex.Ins.Code Ann. art. 21.14–1 (Vernon Supp.1990). The witness, James T. Bounds, admitted that, "Conceivably, it could be confusing." The only medical report concerning Appellee reviewed by Appellants in connection with her claim was the emergency room (ER) report. Deerings did have a signed medical authorization but Dr. Driscoll's records of diagnosis and treatment of Appellee were never requested.

Appellants gave inconsistent explanations as to why benefits were denied Appellee. In response to a pretrial interrogatory, the only defense asserted was that Appellee's injury was her own fault. At trial, however, Mr. Bounds initially stated that there was a question as to whether Appellee sustained any job injury or whether her problems were from a non-compensable prior injury. Later, he stated that benefits were denied because Appellee did not see Dr. Zeeck. Finally, Mr. Bounds testified that benefits were not paid because Appellee had failed to report her injury immediately to her supervisor.

It is difficult to evaluate this last reason in view of Appellee's testimony that her supervisor was not available at the time. Further, Appellee stated she did not initially think the injury was serious. It was only after she completed the last three hours of her shift at 10:30 p.m. that she began to experience increased pain, resulting in her going to the emergency room of the hospital after midnight. She then reported the injury the next day and was not advised that her benefits were foreclosed by her failure to immediately report the injury.

Evaluating the witness Bounds' testimony which contained various explanations for denial of benefits, it cannot be said that he was suggesting that denial of benefits resulted from the cumulative effect of Appellee's various "breaches" of the Appellants' required procedures to obtain compensation. Consequently, the explanations were confusing and inconsistent, as opposed to mutually reinforcing, in justifying denial of benefits to Appellee.

## ACTION UNDER THE INSURANCE CODE

■ Points of Error Nos. One and Two assert that, as a matter of law, the Appellants are not liable to Appellee under the Texas Insurance Code because Appellants were not shown to be engaged in the business of insurance.

The crux of Appellants' contention is that Appellee was not and is not entitled to recover under Article 21.21, sec. 16 of the Texas Insurance Code because Appellant was not engaged in the business of insurance, and even the benefit program alleged cannot be construed as an insurance policy.

Article 21.21, sec. 1(a) of the Texas Insurance Code (Vernon Supp.1990) states the purpose of the act is to regulate trade practices *in the business of insurance.* Appellants were not in the business of insurance and the compensation benefits provided by the Appellants do not even take the form of a formal insurance policy. Deerings' benefit program is incidental to its business of nursing home care and is only incidental to the employer-employee relationship. Tex.Ins.Code Ann. art. 1.14–1, sec. 2(a) 2 (Vernon 1981).

We sustain Appellants' Points of Error Nos. One and Two, insofar as finding that Appellants were not shown to be engaged in the business of insurance and therefore not liable under the Texas Insurance Code.

## THE CONTRACT ACTION

Point of Error No. Three asserts the trial court erred in submitting issues to the jury under a contract theory because there were no pleadings and no proof that Appellants contracted to pay Appellee's job injury benefits.

Point of Error No. Four asserts error in affirming the jury's award of attorney's fees because Appellee failed to prove any cause of action to justify the award.

Both parties knew that Appellee was going to trial at least under a negligence and a contract action. No exceptions were filed by Appellants to Appellee's pleadings. On voir dire examination of the jury panel, counsel for the nursing home in referring to Appellee's lawsuit involving two causes of action, stated, "One for negligence and one for an alleged breach of contract."

■ We find that there was sufficient proof to establish a fact issue as to a contract right to benefits. Sylvia Cosas, Deerings assistant administrator, conceded in her testimony before the jury that the injury benefit was in exchange for employment and part of the employment agreement. The jury did find that Deerings, at

**608**

the time of hiring, did represent to Appellee that she would be covered by workers' compensation. That such compensation would not be under the Texas statute is readily uncontestable since Appellee knew that Deerings was a non-subscriber.

█ However, Appellee did testify that the compensation was to be comparable to the statutory benefit. Contractual misrepresentation and breach may provide a basis for a cause of action. *Tigrett v. Heritage Building Company*, 533 S.W.2d 65 (Tex. Civ.App.—Texarkana 1976, writ ref'd n.r. e.). The jury was also entitled to find that a breach of contract occurred in the arbitrary denial of benefits as evidenced by the inconsistent treatment and explanations given by Sylvia Cosas and James T. Bounds, two witnesses for Appellants. Therefore, we find that there was some evidence before the jury to consider the contract benefits and the breach.

Appellee's First Amended Petition in paragraph VIII clearly asserts a contract cause of action:

> In addition, plaintiff alleges a breach of contract, in that defendants represented to plaintiff that it provide worker's compensation benefits when in fact defendants did not subscribe to a worker's compensation policy of insurance and did not provide to plaintiff the equivalent of worker's compensation benefits that she would have been entitled to under a worker's compensation policy.

The finding of a contract does not stand on the Employee Handbook alone, but on the testimony of Sylvia Cosas and James T. Bounds. Whether the Appellee received the handbook before or concurrent with the hiring does not preclude the injury benefits from being a contract obligation. *Tigrett.* The jury found not only that Deerings knowingly misrepresented job injury benefits but also found actual damages that resulted to Appellee therefrom.

Points of Error Nos. Three and Four are overruled.

## CONCLUSION

We affirm the judgment of the trial court as to the contract findings whereby judgment was awarded Appellee for the actual damages in the amount of $14,910.00 plus prejudgment and post judgment interest and attorney's fees.

We reverse and render judgment for Appellants that Appellee take nothing on her deceptive trade practice claim under the Texas Insurance Code.