**BEKINS MOVING & STORAGE COMPANY and Bekins Moving and Storage Company of Texas, Appellants,**

v.

**Jean WILLIAMS, Appellee.**

**No. 06–96–00041–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted March 11, 1997.

Decided April 25, 1997.

Opinion Granting in Part Appellants'
Motion for Rehearing May 28, 1997.

Appellee's Motion for Rehearing Overruled
May 28, 1997.

---

Steven C. Malin, McKinney, Jerry R. Selinger, Dallas, John W. Alexander, Winnsboro, for appellants.

Barry D. Irwin, Dallas, Eric D. Beal, Arlington, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Bekins Moving & Storage appeals from a judgment awarding Jean Williams damages for mental anguish and damage to her property arising out of Bekins' moving services.

Bekins raises twenty-seven points of error. Williams raises three cross-points. In summary, Bekins contends that the judgment should be reversed because limitations barred Williams' suit; Williams' recovery for negligence is improper because she could recover only in contract; she could not recover in contract because she never paid the moving bill; she cannot recover under the Insurance Code because Bekins is not an insurer; and there is insufficient evidence to support her recovery under the Texas Deceptive Trade Practices Act.

Bekins also contends that the award of treble damages is improper, that Williams received a double recovery, and that the trial court erred by refusing to provide Bekins with sufficient time to review the jury charge.

In June of 1991, Jean Williams hired Bekins to move her household belongings from Dallas to her new home in Quitman. Bekins subcontracted the actual moving of her property, which included an antique square piano and a large amount of china, crystal, and other fragile items, to Melvin & Benny's Movers, a smaller local mover. The movers dropped, broke, cracked, and otherwise damaged various pieces of Williams' property. She tried to get Bekins to pay for the damage, but was unsuccessful. Bekins did make an offer to settle that was substantially below her claim, and she refused to accept. She eventually filed suit against Bekins in a county court at law in Dallas County. Her suit was dismissed for lack of jurisdiction when she filed an amended petition alleging damages above the statutory limits of the court. Three days before the county court at law dismissed her suit, Williams filed a like suit in district court in Wood County.

Trial was to a jury, which returned a verdict favorable to Williams on all her claims except fraud. The jury also failed to find that Bekins' deceptive trade practices were knowingly committed.

## SUMMARY OF AWARDS MADE BY THE JURY ON ALL THEORIES

### Under DTPA claim

| | |
|---|---:|
| Cost of Repair | $ 11,750.00 |
| Loss of use for the property | 3,000.00 |
| Decrease in market value of repairable items due to damage | 1,000.00 |
| Difference in market value of items that a reasonable person would not have repaired | 3,500.00 |
| Subtotal | $ 19,250.00 |
| Prejudgment interest from January 9, 1993 until December 16, 1995 | 6,286.85 |
| Automatic trebling of damages that do not exceed $1,000.00 | 2,000.00 |
| **Total Recovery Under DTPA** | $ 27,518.85 |

### Under Negligence Claim

| | |
|---|---:|
| Subtotal from DTPA claim | $ 19,250.00 |
| Mental anguish | 20,000.00 |
| Plus prejudgment interest from January 9, 1993 until December 16, 1995, at 10% per annum as calculated on the entirety of the above amount as recovery for negligence | 12,781.94 |
| **Total Recovery Under Negligence Claim** | $ 52,031.94 |

### Under Article 21.21 of the Insurance Code

| | |
|---|---:|
| Insurance policy benefits wrongfully and knowingly withheld | $ 5,638.20 |
| Interest at 10% from January 9, 1993 until December 16, 1995 | 1,836.10 |
| Subtotal | $ 7,474.30 |
| **Total Recovery Under Article 21.21 (after trebling)** | $ 22,422.90 |

### Under Article 21.55 of the Insurance Code

| | |
|---|---:|
| Claimed amount of loss | $ 14,000.00 |
| Penalty calculated at statutory rate of 18% from September 6, 1991 until December 16, 1995 | 14,524.94 |
| | $ 28,524.94 |
| Interest at statutory rate of 10% from January 9, 1993 until December 16, 1995 | 9,289.30 |
| Subtotal | $ 37,814.24 |
| **Total Recovery Under Article 21.55 (after trebling)** | $113,442.72 |

### Under the Breach of Contract Claim

| | |
|---|---:|
| Cost to repair | $ 11,750.00 |
| Loss of use | 3,000.00 |
| Decrease in value | 1,000.00 |
| Difference in value | 3,500.00 |
| Subtotal | $ 19,250.00 |
| Prejudgment interest at 6% from January 9, 1993 until December 16, 1995 | 3,599.09 |
| **Total Recovery Under Breach of Contract** | $ 22,849.09 |

### Attorney's Fees

| | |
|---|---:|
| Stipulated attorney's fees under DTPA and Insurance Code | $ 35,000.00 |
| Prejudgment interest on the amount already paid by Williams to her attorneys ($18,702.00) at 10% from January 9, 1993 until December 16, 1995 | 6,090.39 |

SUMMARY OF AWARDS MADE BY THE JURY ON ALL THEORIES–Continued

| | |
|---|---|
| **Subtotal** | $ 41,090.39 |
| Attorney's fees on appeal | |
| Court of Appeals | 5,000.00 |
| Supreme Court | 5,000.00 |
| **Total Attorney's Fees** | $ 51,090.39 |
| **Court costs** | $ 1,708.85 |

Williams elected to recover on the basis of the Insurance Code violations under Sections 21.21 and 21.55 and for negligence. The total recovery was thus $187,897.56, plus attorney's fees in the amount of $35,000.00 plus $10,000.00 on appeal, and costs of court in the amount of $1,949.85, all to bear interest at ten percent from January 4, 1996, until paid.

■ Bekins first contends that this action is barred by limitations and that the trial court should have allowed it to amend its petition on the morning trial was to begin to add limitations as an affirmative defense, or should have ruled in its favor on a "special exception" filed at that time.

■ Parties may amend their pleadings within seven days of the date of trial or thereafter with leave of court. Leave shall be granted unless there is a showing that the amendment will operate as a surprise to the opposite party. TEX.R.CIV.P. 63. The trial court has discretion to refuse an amendment if the opposing party presents evidence of surprise or prejudice, or if the amendment asserts a new cause of action or defense and the opposing party objects to the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990).

■ Bekins' trial amendment asserted a new defense: the statute of limitations. When an amendment introducing new substantive matter has been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980). On appeal, the trial court's ruling will not be disturbed unless the complaining party clearly shows an abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d at 350; *Coble Wall Trust Co. v. Palmer*, 848 S.W.2d 696, 706 (Tex.App.-San Antonio 1991), *rev'd on other grounds*, 851 S.W.2d 178 (Tex. 1992). Williams' suit had been pending for

some two years when Bekins attempted to raise limitations for the first time on the day testimony was to begin. Ordinarily that would operate to the prejudice of the other party.

Bekins argues that because Williams had alleged fraud theories, and only abandoned them shortly before trial, it had no duty to plead limitations as a defense until those theories were dropped from the case, because the fraud theories were not barred. That circumstance, however, did not excuse Bekins' failure to file a limitations plea to Williams' other theories of recovery. We conclude that the trial court did not abuse its discretion by denying Bekins' motion to add an affirmative defense of limitations on the morning of trial, when the case had been pending in that court for two years.

■ The limitations defense would not have prevailed even if it had been timely raised. This suit was first filed in a county court at law in Dallas County. That court dismissed the case after Williams amended her pleadings to seek damages beyond the jurisdiction of that court. Three days before that case was dismissed, Williams filed a like suit in the 114th District Court in Wood County.

The suit was timely filed in the Dallas County court at law. That filing suspended the running of limitations between its filing and the date of a second filing of the same action in a different court if (1) the action was dismissed because of lack of jurisdiction in the initial court and (2) not later than the sixtieth day after the date the dismissal or other disposition became final, the action was commenced in a court of proper jurisdiction. TEX.CIV.PRAC. & REM.CODE ANN. § 16.064(a) (Vernon 1986).

■ Bekins contends that we should not consider the history of the case as outlined

because it is not shown by the documents filed of record in the first case. As a result, Williams has filed a motion asking this court to take judicial notice of records of the county court at law that reflect the initial filing.

To be the proper subject of judicial notice, a fact must be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Further, taking judicial notice is mandatory if "requested by a party and [the court is] supplied with the necessary information." TEX.R.CIV.EVID. 201(d); *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex.1994). In this case, Williams has asked this court to take judicial notice of the records of a case in a court below. They have been provided for review. To take judicial notice of those records in this situation is proper. Accordingly, we have complete information before us to reflect the earlier filing of the suit in Dallas County.

■■■ Bekins contends that, because the second filing occurred three days before the dismissal of the first case, Article 16.064(a) does not apply. We do not agree. The language of the statute is clear, and we do not believe it requires that the first case be dismissed before the case is filed in the second court. It merely provides a date by which the second filing must occur. The tolling provision is remedial in nature and is to be liberally construed. *Vale v. Ryan*, 809 S.W.2d 324, 326 (Tex.App.-Austin 1991, no writ).

We acknowledge that our sister court in Austin, in *Gutierrez v. Lee*, 812 S.W.2d 388, 392 (Tex.App.-Austin 1991, writ denied), has held that Article 16.064(a) applies only if the second suit is filed *after* the first suit is dismissed, and within sixty days of that dismissal. We do not read the statute that way, and so we respectfully disagree with our sister court. We read the statute as merely requiring the second suit to be filed not more than sixty days after the first suit is dismissed, whenever that may be.

■■■ Bekins next contends that the trial court erred by failing to allow a reasonable time for it to review the court's proposed charge and prepare its objections. Bekins notes that the proposed charge was fifty-one pages long, and contends that the court began taking objections approximately thirty-two minutes after the attorneys were given the charge for the purpose of making their objections. Bekins' attorneys, however, actually received a copy of the proposed charge at the beginning of trial four days earlier. Although about twenty pages in the center section of the proposed charge were changed by the trial judge, her alterations consisted of a consolidation of damage issues for the remaining questions and resulted in a shorter jury charge. In denying Bekins' request for additional time for review, the trial court noted the length of time that they had the charge and that she had added some of Bekins' requested issues while deleting some of Williams', and concluded that the amount of time provided was sufficient under the circumstances.

This court has recently addressed this issue in *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 760 (Tex.App.-Texarkana 1996), *aff'd in part, rev'd in part on other grounds*, 939 S.W.2d 146, 40 Tex. Sup. Ct. J. 360 (Feb. 21, 1997). TEX.R.CIV.P. 272 provides that "[t]he charge ... shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto outside the presence of the jury...."

■■ The time allowed for objections and requests is a matter within the discretion of the trial court and is reviewable only for a showing of abuse. *Federal Underwriters Exch. v. Tubbe*, 180 S.W.2d 473 (Tex.Civ. App.-Amarillo), *rev'd on other grounds*, 143 Tex. 216, 183 S.W.2d 444 (1944); *see Hargrove v. Texas Employers' Ins. Ass'n*, 332 S.W.2d 121 (Tex.Civ.App.-Amarillo 1959, no writ); 4 McDONALD TEXAS CIVIL PRACTICE § 22.40 (rev.1992).

Bekins specifically complains that it did not have sufficient time to examine the causes of action in the charge and determine if there were elements missing, and argues that several elements are missing from the charge. Those portions of the charge, however, had been in Bekins' possession *in that form* for four days.

Thirty minutes for reviewing and objecting to a fifty-one page charge, most of which had been in counsel's possession for four days and which had only been changed to consolidate some damage issues, was adequate. We

conclude that the trial court did not abuse its discretion in this matter.

■ Bekins next contends that its motion for judgment notwithstanding the verdict should have been granted because Williams did not satisfy an essential condition precedent to her recovery. The provision Bekins contends is a condition precedent is in the bill of lading. It requires that a claimant must provide a written statement of claim and must pay the moving bill.

■ Bekins bases its contention on a line of cases typified by *Hossley v. Roadway Express, Inc.*, 419 S.W.2d 396, 397 (Tex.Civ. App.-Beaumont 1967, writ ref'd n.r.e.). In that case the court reviewed language in a bill of lading stating that when a shipper did not make a written claim for loss or damage within nine months, the carrier would not be liable. The court held that the provision could not be waived.[1]

■ The language on which Bekins relies is as follows:

7. CLAIMS FOR LOSS OR DAMAGE.

(a) Any claim for loss, damage or over-charge shall be in writing. As a condition precedent to any claim adjustment or payment, said claim shall be accompanied by the original paid bill for transportation and original bill of lading, if not previously surrendered to the carrier. Carrier may require certified or sworn statement of claim.

■ A condition precedent is a disfavored analytical tool in contract reviews. *See Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 641 (Tex.App.-Texarkana 1995, writ dism'd). Even if the quoted provision is considered a condition precedent, there is sufficient evidence in this case to support a finding that Bekins waived it. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming a right. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967). A condition pre-

cedent may be waived, *Sun Exploration and Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Kennedy v. McMullen*, 39 S.W.2d 168, 174 (Tex.Civ.App.-Beaumont 1931, writ ref'd), and the waiver of a condition precedent may be inferred from a party's conduct, *Sun Exploration and Prod. Co. v. Benton, supra; Ames v. Great Southern Bank*, 672 S.W.2d 447, 449 (Tex.1984).

The evidence shows that Bekins did in fact adjust Williams' damage claim and tendered payment to her without insisting that she comply with the provisions of Paragraph 7.

■ Moreover, the provisions of Paragraph 7 are more accurately seen as covenants dependent on proper and full performance by the carrier of the duties imposed by the contract. In this case, the carrier did not perform several duties that were imposed by the contract, including proper packing, proper handling of goods, proper wrapping of furniture, and performing unpacking and cleaning services at the destination. On the previous breach of a dependent or reciprocal covenant by one party, the other party is not required to perform, even if the covenant is considered a condition precedent. *See Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d at 641; *Dallas Market Ctr. v. The Swing, Inc.*, 775 S.W.2d 838, 842 (Tex.App.-Dallas 1989, no writ).

Finally, there is a general line of authority applicable to actions under a contract stating that a party to a contract is not required to first pay a debt under a written contract in order to maintain a cause of action against another party who has previously breached that contract, because it is inappropriate to compensate a wrongdoer for his wrongdoing. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex.1981); *Graco Robotics, Inc. v. Oaklawn Bank, supra; Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex.App.-Texarkana 1993, writ denied).[2]

---

1. In the context of a claim on an insurance policy, proof of loss and notice of claim are conditions precedent to recovery on the policy. *American Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763 (Tex.1987); *Employers Cas. Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 574 (Tex. 1972). In the face of a verified denial of proof of loss, a claimant may still recover upon jury findings supporting theories of waiver or substantial compliance. *Shaver v. National Title & Abstract Co.*, 361 S.W.2d 867, 869 (Tex.1962).

2. In the ARCO decision, this court held that this concept provides that, "When a party to the contract fails to perform his obligation, he may not thereafter enforce the remaining terms of the contract." *Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex.App.-Texarkana 1993, writ denied). Thus, a later breach by a party does not bar recovery on an earlier violation of the agreements, and a recovery was possible under the terms of those agreements.

Williams' recovery is not negated as a matter of law. The court did not err by denying Bekins' motion for judgment notwithstanding the verdict or motion for directed verdict.

Bekins also argues that, since a condition precedent was not met, as a matter of law Williams cannot recover under the Insurance Code or the DTPA because both of those theories depend on liability under the contract. We have concluded, however, that there is sufficient evidence to support a finding that Williams was not required to meet the alleged condition precedent in order to recover. Although the jury did not explicitly find waiver, we can presume the finding in support of the judgment pursuant to Tex. R.Civ.P. 279.

Bekins next contends that because the only cognizable cause of action available to Williams was breach of contract, the trial court should have granted a judgment notwithstanding the verdict on all other causes of action.

 The real question is whether, in addition to breaching its contract, Bekins also committed a tort. Breach of contract is by definition actionable, but the mere breach of contract is not a tort. In *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 493–95 (Tex.1991), the court reviewed a plaintiff's action against a telephone company for its failure to publish a yellow pages advertisement in accordance with the contract between the parties. The Supreme Court held that where the claim arises solely from the contract and the damages are only for economic loss, the action is in contract and not in tort. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d at 495. Clearly, when a plaintiff seeks to recover only the expected benefit of his bargain, the action sounds exclusively in contract. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex.1996).

The rule enunciated in these cases, however, does not change the rule that a contract may create duties both in contract and in tort. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947). The rule announced in *DeLanney* and *Ace Sign* did, however, provide some guidance for analysis. "The nature of the injury most often determines which duty or duties are breached. When the injury is only the eco-

nomic loss to the subject of a contract itself the action sounds in contract alone." *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d at 495 (quoting *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986)); *Deaton v. United Mobile Networks, L.P.,* 926 S.W.2d at 760.

In this case, Williams' damages, except for deceptive trade practices and Insurance Code violations, arise solely from injury to the subject of the contract, i.e., her personal property and furniture. Although she claimed that Bekins acted negligently, the damages are only to her property, the subject of the contract, and they do not extend to any third party or property outside the contract. Williams also claimed mental anguish, but her anguish was caused by Bekins' treatment of her property-not by any direct or intentional tort against her personally. Under the authority of *DeLanney* and the authorities discussed therein, we conclude that Williams did not prove a cause of action for negligence separate and distinct from her contractual claims.

We find, however, that she did prove a case of false and deceptive practices under the DTPA, which we will discuss later in this opinion.

 Bekins next argues that the existence of a contract between it and Williams prohibits her recovery under either the DTPA or the Insurance Code. If Williams' only allegation under the DTPA was that Bekins made representations that its performance would be of a certain quality, and that it failed to deliver that quality of performance, those representations would be nothing more than representations that it would fulfill its contractual duty, and the action could be only for breach of contract. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d at 14. A mere breach of contract-without more-does not constitute a false, misleading, or deceptive action. *Crawford v. Ace Sign, Inc., supra; Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.,* 661 S.W.2d 933 (Tex.1983).

That is not the situation here. Williams alleged that Bekins made several misrepresentations that induced her to accept its bid to move her furniture. Specifically, she alleged that Bekins' representative Nola Leverenz told her that (1) Bekins would wrap all of her furniture, (2) if anything was broken that was a part of a set, such as a cup or saucer, Bekins would replace the entire set,

(3) if any item was destroyed or damaged Bekins would replace it, (4) Bekins had a good record, (5) they would provide her insurance, (6) they would employ professionals to move her piano, and (7) cleaning services would be provided. Williams testified that without these representations she would not have engaged Bekins to move her property.

All of these representations are outside the contract, except possibly the representation that damaged property would be paid for.

Williams did not allege that Bekins failed to move her property. She rather alleged that Bekins moved her property using methods different from those represented that induced her to accept its bid, and that Bekins orally informed her about procedures to be used during the move and services to be provided before and after the move that were not provided for in the contract.

Williams alleged representations beyond those necessarily covered by the terms of the contract. Thus, she could recover for deceptive practices under the DTPA. She cannot, however, collect more than once for her injury.

Bekins next contends that there is legally and factually insufficient evidence to support the jury finding that Bekins' representations were the producing cause of Williams' damages. When deciding a legal insufficiency point, we consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d at 499; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

When deciding a factual insufficiency point, we review all of the evidence, and we will set aside the finding only if we find it is against the great weight and preponderance of the evidence and is clearly unjust. *Holley v. Watts*, 629 S.W.2d 694 (Tex.1982).

The Deceptive Trade Practices Act grants consumers a cause of action for damages caused by false, misleading, or deceptive acts or practices. TEX.BUS. & COM.CODE ANN. § 17.50(a)(1) (Vernon 1987);[3] *Riverside*

*Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980). A consumer must, in order to prevail on a DTPA claim, establish that the defendant violated a specific provision of the Act and that the violation was a producing cause of the consumer's injury. TEX.BUS. & COM.CODE ANN. § 17.50(a); *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex. 1996); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995).

In determining whether an act is actionable under the DTPA, the question is whether the defendant's deceptive trade act or practice was committed in connection with the plaintiff's transaction in goods or services. *Amstadt v. United States Brass Corp.*, 919 S.W.2d at 650. Generally, an act is false, misleading, or deceptive if it has the capacity to deceive an "ignorant, unthinking, or credulous person." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472; *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978).

A producing cause is a substantial factor that brings about the injury and without which the injury would not have occurred. *See Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995) (citing *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980)). For DTPA claims, the plaintiffs need only show producing cause, which does not require foreseeability. *See Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 922 (Tex.App.-Waco 1985, writ dism'd). Raising a fact question of producing cause, as with proximate cause, requires some evidence that the defendant's act or omission was the cause in fact of the plaintiff's injury. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 481; *Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d at 161.

The following facts are relied on by Williams to prove that Bekins made false and deceptive acts that caused her damages. Williams accepted a bid from Bekins, one of the three companies she contacted, based on representations by Nola Leverenz that Bekins would wrap all her furniture; that if anything of a set was broken, Bekins would

---

**3.** *Amended by* Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex.Gen.Laws 2992.

replace the set; that if Bekins destroyed or broke any item, it would replace it; that Bekins had a good record; that it would provide her with insurance; that it would employ professionals to move her piano; that her furniture would be wrapped and packed; and that cleaning service would be provided. Based on these representations about Bekins' methods and procedures, Williams testified that she then solicited a bid from Bekins, which she eventually accepted. She also testified that without such assurances of professionalism in her move, she would not have employed Bekins to move her property.

Bekins relies upon *Doe v. Boys Clubs of Greater Dallas, Inc., supra,* to support its claim of no liability under the DTPA. In that case, Boys Club employees represented to a grandmother that investigations were made into the character and background of a volunteer worker when none was actually made, and the volunteer later molested her grandchildren. The court concluded that the representations were an attenuated condition that made the injury possible, but that the act of abuse, and not the representations, caused the injury. The court set out an extensive listing of the actions independently taken by the volunteer over a year's time in order to gain the confidence of the child and grandparents, including weekday and weekend visits. The director did not reveal what he knew about the volunteer—that he was working there as a court-referred probationer doing community service for DWI convictions—but the court found that the failure to disclose was not for the purpose of inducing the grandmother to join the Boys Club.

The court held that the long-term relationship created between the volunteer and the grandparents developed independently of the Boys Club and that the mere fact that they first met there was so attenuated from the harm as to be insufficient to raise the issue of producing cause.

In this case, the linkage is not attenuated. The representations were made by an agent of the business in order to obtain Williams' business, and no independent relationship is relevant to this situation. In the absence of such attenuation, the evidence does not show

as a matter of law a lack of producing cause, nor is the evidence of producing cause factually insufficient. If the representations made by Bekins caused Williams to enter into a contract, the performance of which damaged her property, the representations were a producing cause of her damages.

■ Bekins next contends that the jury's finding of unconscionability was improper because the evidence is legally and factually insufficient to support the finding. Unconscionability is defined by TEX.BUS & COM. CODE ANN. § 17.45(5) (Vernon 1987)[4] as follows:

(5) "Unconscionable action or course of action" means an act or practice which, to a person's detriment,

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Bekins contends that its acts were not unconscionable because any such acts must take place simultaneously with the representation. It argues that anything occurring after the contract was signed cannot reflect on the fairness of the original transaction, citing *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 441 (Tex.1995), and *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985). The court in those cases held that proof of acts showing unfairness at a time occurring well after the initial representations would not support a finding of unconscionability. The question involved in those cases, however, was whether the later acts showed the unfairness of the initial representations.

In our case, the unconscionable acts by Bekins were committed at the very time Williams entered into the contract. That meets the DTPA requirements, as well as the requirements announced by the applicable cases. The fact that the *damage* did not occur until later does not defeat liability under the DTPA.

4. *Amended by* Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex.Gen.Laws 2989,

■ Bekins further argues that there is not the requisite gross disparity between the value received by Williams and the consideration she was to pay. Bekins tendered a bill for $5,600.00 for moving her property, and the jury found that the damages to Williams totaled $19,250.00. Comparing those figures, and assuming that a competent move would have been worth the $5,600.00 charged, then Williams' damages cost approximately three times the cost of the move. Her total cost should have been the $5,600.00 charged, and not that amount *plus* an additional $19,250.00. When the damages caused by Bekins is compared to the zero amount that would have been caused by competent movers, it is substantial. Similarly, if a company costs a consumer damages amounting to three times the value of the service because of its incompetent delivery of the service, the disparity in value received for the money to be paid is considerable. We find sufficient evidence to support a finding of gross disparity.

■ Bekins next contends that the evidence does not support the verdict on the alternative DTPA ground that it took advantage of Williams to a grossly unfair degree. Bekins points out that Williams was fully capable and competent to negotiate her moving contract, as demonstrated by her personal sale of property to the City of Dallas before the move, as well as her actions in interviewing and then taking bids from three companies before engaging Bekins as her mover.

Bekins' representatives made several statements to Williams promising that it would personally move her property, that experts would move her piano, that professionals would move her property, and that it would properly wrap and pack her property. There is evidence that all of these representations were false. The fact that Williams was competent does not necessarily immunize Bekins from the result of misstatements made by its representative to Williams in order to induce her to engage their services. This evidence supports a finding that Bekins

took advantage of "special skills and training" at the inception of the contract to take advantage of Williams and induce her to enter into a contract that was grossly unfair to her. *See Parkway Co. v. Woodruff,* 901 S.W.2d at 441.

Bekins next contends that the trial court erred by denying its motion for summary judgment, motion for directed verdict, and motions for judgment notwithstanding the verdict, because its activities in selling "transit insurance" are not covered by the Insurance Code. Bekins' argument revolves around its general contention that the kind of transit insurance it sells is not insurance within the meaning of the Insurance Code.

Bekins argues that the court erred by denying its motion for summary judgment. A denial of a motion for summary judgment is not appealable except in statutorily specified circumstances. This is not one of those circumstances.

■ As to the contention that Bekins' transit insurance is not insurance within the meaning of the Insurance Code, at trial both Bekins' representative and its attorney referred to the coverage as insurance. Bekins now contends that it was not providing insurance, but that its provision for payment of the property's "declared value" in case of loss or damage was merely incidental to its ordinary business activity, citing Tex.Ins.Code Ann. art. 1.14–1, § 2(a)(2).[5] This section says the making of a contract of guaranty or suretyship agreement that is merely incidental to another legitimate business does not constitute doing business as an insurer.

■ Guaranty and suretyship are collateral agreements to perform an undertaking, i.e., to perform if the person liable in the first instance fails to perform. Black's Law Dictionary 705 (6th ed.1990). If the undertaking is joint with the principal obligor, it is a suretyship. If it is a separate and distinct contract, it is a guaranty. *Id.*

The transit insurance provision in Bekins' contract is not a guaranty or a suretyship.

---

5. Tex.Ins.Code Ann. art. 1.14–1, § 2(a), Act of July 17, 1989, 71st Leg., 1st C.S., ch. 14, § 6, 1989 Tex.Gen.Laws 26, *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 685, § 3.031, 1993 Tex.Gen.Laws 2577.

It specifically provides for "insurance protection" in the sum of $75,000.00, for an "insurance protection charge" of $480.00. It provides for exclusions of liability in certain instances and provides that if the amount of insurance does not cover the actual value of the property, the customer shall be regarded as his own "insurer" to the extent of the difference. We construe the provision as insurance as it is designated, and not a guaranty or suretyship.

Bekins' contract called the coverage insurance, its representative called it insurance, it was paid for as being insurance, the documents specified the amount of coverage, the parties both believed that Bekins was providing insurance, and the coverage was designed to pay Williams for damage to her property above the stated sixty cents per pound. Thus, the coverage was insurance and comes within the Insurance Code.[6]

Bekins next contends that the court erred by denying its second amended motion for judgment notwithstanding the verdict because there is no damage finding to support an award under Tex.Ins.Code Ann. art. 21.55 (Vernon Supp.1997), and because the answer to question 9(c) does not form a basis for an award under that article of the Insurance Code. Article 21.55 specifies particular time periods during which an insurer must act on claims. Bekins contends there is no question asking the jury what amount it owed and wrongfully withheld. The court awarded $14,000.00 for damages under this issue, the amount of the claim the jury found Williams had filed with Bekins. The jury finding of this amount is directly linked to the question on Article 21.55 damages.

Bekins now contends that this measure of damages is improper and that the correct measure is not the amount demanded, but is rather the amount actually due under the

policy. Bekins did not object to the jury charge on this basis. Any complaint about the form of submission or the failure to instruct is therefore waived. *Religious of the Sacred Heart of Texas v. City of Houston,* 836 S.W.2d 606 (Tex.1992); *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987); *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196, 199–200 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.).

Bekins next contends that damages should not have been awarded under Article 21.55 because Williams never triggered its duty to pay. Bekins argues that no insurance timetable had begun to run because Williams had not yet paid her moving bill. Again, Bekins argues that Williams' payment of its bill of lading was a condition precedent to any requirement that it might have to handle her claim.

Article 21.55, § 2 sets out several specific practices that must be followed when an insured files a claim with an insurer. The insurer must, no later than the fifteenth day after receipt of notice of a claim (1) acknowledge its receipt, (2) commence any investigation, and (3) request from the claimant any information that it reasonably believes will be required. The insurer must notify the claimant in writing of the acceptance or rejection of the claim no later than the fifteenth business day after the date the insurer receives "all items, statements, and forms required by the insurer, in order to secure final proof of loss." Tex.Ins.Code Ann. art. 21.55, § 3. If the claim is rejected, the insurer is required to notify the claimant no later than the fifteenth day after the date set out above and specify why the insurer needs additional time. The article further provides that:

(e) No later than the 45th day after the date an insurer notifies a claimant under

6. Tex.Ins.Code.Ann. art. 1.14–1 § 2(a) provides:

Sec. 2. (a) Any of the following acts in this state effected by mail or otherwise is defined to be doing an insurance business in this state....

1. The making of or proposing to make, as an insurer, an insurance contract.

2. The making of or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety.

3. The taking or receiving of any application for insurance.

4. The receiving or collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance or any part thereof.

5. The issuance or delivery of contracts of insurance to residents of this state or to persons authorized to do business in this state.

....

Subsection (d) of this section, the insurer shall accept or reject the claim.

(f) Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

(g) If it is determined as a result of arbitration or litigation that a claim received by an insurer is invalid and therefore should not be paid by the insurer, the requirements of Subsection (f) of this section shall not apply in such case.

The language upon which Bekins depends is found in the following paragraph.

### 7. CLAIMS FOR LOSS OR DAMAGE.

(a) Any claim for loss, damage or overcharge shall be in writing. As a condition precedent to any claim adjustment or payment, said claim shall be accompanied by the original paid bill for transportation and original bill of lading, if not previously surrendered to the carrier. Carrier may require certified or sworn statement of claim.

Assuming that this provision was meant to apply to the insurance contract, Bekins has waived any requirement of performance. Bekins did not require payment before delivery. Even after Williams' property was damaged and she demanded damages under the contract, Bekins never demanded payment of the insurance premium as a precondition to its own settlement of the damage claim.

Bekins did not demand payment of the insurance premium before addressing Williams' claim. Bekins did nothing except dispute the amount of money actually owed for the damages. Under these facts, since Bekins chose to extend credit for the move, including the insurance, it was not an absolute and unwaivable requirement that Williams pay the insurance premium before demanding proper compensation under the insurance contract.

■ Bekins next contends that the trial court erred by awarding treble damages based on the $14,000.00 award made for violations of Article 21.55 of the Insurance Code. The damages were not trebled under Article 21.55, which does not provide for such, but under Article 21.21, § 16(b),[7] which provides for a recovery of treble damages if the jury finds that the acts were knowingly committed.[8] Bekins argues that because Article 21.55 does not provide for trebling, the award was improper. Williams responds by noting that Article 21.55, § 7 specifically provides that remedies under that section are not exclusive, and she argues that Article 21.21 allows insureds to seek redress for violations of unfair settlement practices.

Williams relies upon *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 131–36 (Tex.1988), as authority for her position that damage awards should be handled through the methods prescribed in Article 21.21. In *Vail,* the court approved a recovery for unfair claims settlement practices as defined by an Insurance Board rule (as was then specifically provided by Article 21.21, § 16) and confirmed that treble damages were correctly assessed under Article 21.21.

There is no language that either explicitly or implicitly provides that a recovery under Article 21.55 is restricted to the damages provided by that article. Indeed, the quoted language of the article suggests otherwise, as it is cumulative of other remedies. Further,

7. TEX.INS.CODE ANN. art. 21.21, § 16(b), Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex.Gen.Laws 3000.

8. Effective September 1, 1995, this section was amended to provide that any recovery *may* be trebled, and not that it *must* be trebled. The language making violation of "rules and regulations" actionable under that section was removed in the current version of the Code. However, this action was filed before the active date of the newly rewritten section, and the former statute applies to this case.

Art·cle 21.21, § 1(b) [9] states that it is to "be liberally construed and applied" to promote its purposes. Nevertheless, Article 21.21, § 16(a) [10] limits its application as follows:

(a) Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) the amount of actual damages plus court costs and reasonable and necessary attorney's fees. If the trier of fact finds that the defendant knowingly committed the acts complained of, the court shall award, in addition, two times the amount of actual damages....

Even though a delay in payment might be considered an unfair insurance practice, it does not appear that a claimant can recover damages under the authority of Article 21.55, and then have those damages trebled under Article 21.21, unless the act also is listed in Article 21.21, § 4,[11] or if some Board enactment declared the act to be an unfair act or practice.

Williams does not specify any part of Article 21.21, § 4 which would apply to this case. A list of acts that constitute unfair claims settlement practices is set out in Article 21.21–2, § 2.[12] The list includes several entries involving failure to promptly investigate claims and settle those in which liability is

reasonably clear, and compelling policyholders to litigate in order to recover by offering amounts substantially less than the amount eventually recovered. This list has specifically been applied to the treble damages provision in *Vail* and in *Chitsey v. Nat'l Lloyds Ins. Co.*, 738 S.W.2d 641, 642–43 (Tex. 1987). The list, however, is different from the unlawful acts set out in Article 21.55 because it provides internally for damages on proof that the act was committed, while Article 21.21–2 does not.

In the absence of any proof of Board rules stating that a failure to promptly pay and handle claims is an unfair or deceptive act or practice, or any showing that Article 21.21, § 4 applies to a failure to promptly pay and handle claims, or any showing that the "laundry list" of Article 21.21–2 applies to a failure to promptly pay and handle claims, we conclude that treble damages are not available for a violation of Article 21.55. Thus, the trial court erred by rendering judgment for treble damages on a recovery under that article. Because of this conclusion, we need not address Bekins' further argument that interest was improperly assessed against the entire amount, including the eighteen percent interest award.

Bekins further argues that the court incorrectly calculated the amount of prejudgment interest to be awarded on the eighteen percent interest. Bekins argues the eighteen percent accrued annually, so the full amount was not due on the date the court made its calculation, and prejudgment interest on that penalty should have been assessed only as the eighteen percent accrued. The court used as its beginning date for damages the date of injury plus six months, pursuant to *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985); *Crum & Forster, Inc.*

9. Tex.Ins.Code Ann. art. 21.21, § 1(b) (Vernon 1981), *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 685, § 20.17, 1993 Tex.Gen.Laws 2704.

10. Tex.Ins.Code Ann. art. 21.21, § 16(a), Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex.Gen.Laws 3000.

11. Tex.Ins.Code Ann. art. 21.21, § 4, Act of May 23, 1989, 71st Leg., R.S., ch. 966, § 1, 1989 Tex.Gen.Laws 4043, *amended by* act of May 19, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen.Laws 2997.

12. Tex.Ins.Code Ann. art. 21.21–2, Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.12, 1991 Tex.Gen.Laws 1060, *amended by* Act of August 25, 1991, 72nd Leg., 2nd C.S., ch. 12, § 21.01, 1991 Tex.Gen.Laws 364.

*v. Monsanto Co.*, 887 S.W.2d 103, 152–54 (Tex.App.-Texarkana 1994), *judgm't vacated by agr.*, No. 06–92–00100–CV, 1995 WL 273592 (Tex.App.-Texarkana 1995, no writ) (not designated for publication).

Under the *Cavnar* methodology, when damages are incurred intermittently during the course of litigation, interest is computed from a date six months after the date of injury, even if the date that each damage accrued is ascertainable. This rule should apply to this case as well. Thus, the method employed by the trial court is appropriate, and no error is shown.

Bekins next contends that the trial court erred by awarding prejudgment interest on the eighteen percent awarded under Article 21.55 because it constitutes a double recovery. As previously noted, the statute expressly provides that the eighteen percent is part of the damages and not an additional recovery.

The term "interest" encompasses two distinct forms of compensation: interest as interest and interest as damages. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d at 551–52. Interest as interest is compensation allowed by law or fixed by the parties for the use or detention of money. *Id.* Interest as damages is compensation allowed by law as additional damages for lost use of the money during the lapse of time between the accrual of the claim and the date of the judgment. *Vickery v. Vickery*, No. 01–94–01004–CV, 1996 WL 698867, —— S.W.2d —— (Tex.App.-Houston [1st Dist.] Dec. 5, 1996, n.w.h.). Even if the award is considered purely prejudgment interest and not definable as damages, this court held in *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d at 154, that prejudgment interest was an element of actual damages. Accordingly, the trial court correctly awarded interest on the full amount of the damages, which according to statute includes the eighteen percent penalty.

Bekins next contends that the court erred by awarding a mental anguish award because this is solely a contract action. Generally, in order to recover for mental anguish a plaintiff must prove the existence of a tort action, because mental anguish is not recoverable under a contract action alone. *Hallmark v. Hand*, 885 S.W.2d 471 (Tex.App.-El Paso 1994, writ denied); *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 710 (Tex.App.-Texarkana 1985, writ ref'd n.r.e.), *cert denied*, 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 520 (1987).

Our Supreme Court has held that DTPA and Insurance Code cases can provide the necessary underpinning for a recovery of damages for emotional distress. In deceptive trade practices and Insurance Code cases that do not involve personal injury, however, there must be a threshold finding of a culpable mental state, i.e., knowing conduct, before there can be a recovery of damages for mental anguish. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 436 (Tex.1995); *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980). The jury here awarded mental anguish damages for the DTPA violations, but found that Bekins' acts were not knowingly committed. Consequently, damages for mental anguish are not proper for the DTPA violations.

The jury did find that Bekins' Insurance Code violations were knowingly committed, but it assessed "$0" for mental anguish damages for those violations.

Because of these jury findings, an award of mental anguish damages was not proper. Thus, the mental anguish recovery may stand only if negligence was an available cause of action. We have concluded that negligence was not available in this situation. Consequently, the award for mental anguish will be deleted from Williams' recovery.

Bekins also contends that the evidence of mental anguish was insufficient to support the verdict. Because we have found that mental anguish damages were not proper, it is unnecessary for us to consider this point.

Bekins next contends that the trial court erred by awarding judgment under multiple theories of recovery for only one compensable injury. Williams elected to recover under theories of negligence, DTPA, and Insurance Code violations. A plaintiff may recover only once for a particular injury. In its second amended motion for judgment

notwithstanding the verdict, Bekins contended that if damages were awarded under Article 21.55 of the Insurance Code and negligent misrepresentation under the DTPA, a double recovery would be effected. We have eliminated from the judgment Williams' recovery for negligence, so there is no double recovery in that regard.

■■■■ A double recovery only exists when a plaintiff obtains more than one recovery for the same injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991). Although Williams proved a breach of contract action, and the jury found for her under that theory, the damages awarded her under that theory were for injury to her property. She is recovering the same damage award under the DTPA claim. Since we are required to award her the highest recovery for the same injury under alternate theories, we will eliminate the recovery under the breach of contract action and substitute the recovery under her other claims. *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361 (Tex. 1987).

This modification of the judgment will leave her recoveries under the DTPA and the Insurance Code, and attorney's fees.

■■■■ With respect to the DTPA and Insurance Code actions, Williams suffered different injuries. The first was to her property by virtue of the DTPA violations. The second was the damage to her personally-a statutory tort under the Insurance Code, for which the statute provides certain penalties and interest as damages. Thus, allowing recovery under the DTPA and the Insurance Code did not effect a double recovery.

Although Williams elected to recover for negligence and Insurance Code violations, we have eliminated her recovery for negligence. Because we are required to award her the highest recovery permitted under the various theories alleged and proven, we will modify the judgment to award her recovery under the DTPA in place of the negligence recovery. *See Birchfield v. Texarkana Memorial Hosp., supra.*

For the reasons stated, we reform the judgment to award recovery under the DTPA claim, delete the recovery for negli-

gence, delete the recovery for mental anguish, and eliminate the trebling of damages under Tex.Ins.Code Ann. § 21.55. The recovery will be $27,518.85 under the DTPA, $22,422.90 under Section 21.21 of the Insurance Code, and $37,814.24 under Section 21.55 of the Insurance Code, for a total of $87,755.99, with interest from date of judgment until paid. In addition, attorney's fees and costs amounting to $46,949.85, as awarded in the original judgment, are allowed. As reformed, the judgment is affirmed.

## ON MOTION FOR REHEARING

On motion for reheating, Bekins correctly contends that we erred by awarding $5,000.00 for appellate attorney's fees and an additional $5,000.00 in attorney's fees for appeal to the Supreme Court. We reform our opinion and judgment to reflect an award of $41,949.85 attorney's fees and costs, and an additional attorney's fee of $5,000.00 only in the event Bekins appeals unsuccessfully to the Supreme Court or Williams successfully appeals to that court.

Bekins also contends that our disposition of its claim of limitations is improper because the documents reflecting the previous filing of this case in a different court were not before the trial court at the time it made its decision, and also because the record of discussion between counsel and the court indicates that the court denied Bekins' motion because it was untimely, being first presented to the court while the jury was waiting for trial to begin.

This contention, even if correct, is not ground for reversal. Even if the trial court based its decision on evidence not before it, or on the untimeliness of the motion, and even if we concluded that such action constituted an abuse of discretion, the court's ultimate decision was correct, and we will not reverse a correct decision, even if the trial court gave an incorrect reason for the decision. *Guaranty County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986). We focus on the result reached by the trial court, rather than the reasons stated in the order. *Luxenberg v. Marshall*, 835 S.W.2d 136, 142 (Tex.App.-Dallas 1992, orig. proceeding).

The trial court reached the correct result. We will not overturn its ruling.

Bekins also contends on rehearing that the Texas Railroad Commission has overriding control of all aspects of its operations and that Legislature through the Insurance Code cannot interfere with this control by imposing separate requirements for any insurance coverage it sold with its moving contract. As pointed out in the cases cited by Bekins, the Railroad Commission clearly has the authority to regulate transportation costs and fees. Bekins, however, has not cited us to any authority suggesting that its sale of insurance is similarly controlled to the exclusion of the Insurance Code.

Bekins relies on the case of *Texas Health Enterprises, Inc. v. Gentry*, 787 S.W.2d 604 (Tex.App.-El Paso 1990, no writ). In *Gentry*, a nursing home provided medical care for its employees with specified health care providers. An employee obtained treatment from an undesignated doctor, and the employer refused to pay the claim. The court held that she could not recover under the Insurance Code because the benefit program could not be construed as an insurance policy and because the employer was not in the business of insurance, its medical benefit program being only incidental to the employer/employee relationship.

*Gentry* is distinguishable. The employee paid nothing to the employer for medical care: rather, it was a benefit of her employment. It was not a service sold to the employee. Thus, the court concluded that the benefit program was incidental to its business and to the relationship between the parties.[1]

In this case, Bekins sold a set dollar amount of coverage to a client for the purpose of insuring her property against damage caused by Bekins. *Compare: Threlkeld–Covington, Inc. v. Baker Drywall Co.*, 837 S.W.2d 840 (Tex.App.-Eastland 1992, no writ). It was not "incidental" to or only slightly connected with the main relationship created between the parties by contract, but was an integral part of Bekins' overall sale of its moving services. *See* 1 COUCH ON INSURANCE 2d § 1.111 (1984). The mere fact that Bekins' main business is moving furniture does not mean that it does not also sell insurance to cover losses in its moving services.

The motion for rehearing is granted in part, and otherwise is overruled.

---

1. If one act is "incidental" to another, it is (1) "occurring merely by chance or without intention or calculation," or (2) "being likely to ensue as a chance or minor consequence." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 587 (10th ed.1993).