### KENNEDY et al. v. McMULLEN.
### No. 2067.

Court of Civil Appeals of Texas. Beaumont.
May 7, 1931.

Rehearing Denied June 6, 1931.

J. E. Newberry, of Dallas, and Jno. S. Redditt, of Lufkin, for appellants.

J. J. Collins, of Lufkin, for appellee.

WALKER, J.

On the 8th day of February, A. D. 1928, appellee, C. S. McMullen, was operating, and for some months prior to that date had been operating, passenger busses between the towns of Lufkin and Huntington in Angelina county, a distance of approximately ten miles, under authority of a certificate of public necessity and convenience, issued to him by the Railroad Commission. On that date L. Kennedy and C. L. English, two of the appellants herein, made application to the Railroad Commission for a certificate of public necessity and convenience to operate passenger busses from Lufkin, in Angelina county, to Beaumont, in Jefferson county, through Huntington, Zavalla, and all other towns situated upon the proposed route between Lufkin and Beaumont. On the 1st day of March, A. D. 1928, appellee, McMullen, made application for a like certificate to operate passenger busses over the same route described by Kennedy & English. Under orders of the Railroad Commission hearings were had upon these applications, but pending these hearings, without a formal order being made by the Railroad Commission the applicants made a written agreement settling the contest between them, stipulating that appellee McMullen would waive his application for the certificate in favor of Kennedy & English, and that the certificate should issue to Kennedy & English and that he would apply to the Railroad Commission for authority to abandon the operation of his busses between Lufkin and Huntington, and that the Lufkin-Huntington route should be taken over by Kennedy & English and operated by them. The con-

sideration for the contract, as stipulated therein, was as follows: "In consideration of the foregoing undertakings on the part of the party of the second part, the parties of the first part hereby obligate and bind themselves that from and after the commencement of their operations of their bus lines between Lufkin and Beaumont they will pay to the party of the second part the sum and amount of twenty-five cents per capita for each adult passenger from whom a fare is collected by parties of the first part and twelve and one-half cents per capita for each passenger transported at half fare between Lufkin and Huntington and regardless of whether or not the passenger goes to or beyond Huntington and regardless of where such passenger originated and the same amount shall be paid by parties of the first part on all passengers transported from Huntington and regardless of destination; it is also agreed that when any passengers are transported along the route between Lufkin and Huntington to any intermediate points between said town of Huntington and Lufkin, of the fare charged such passengers for such transportation the parties of the first part shall pay to the party of the second part one-half thereof. By adult passengers is meant any person over eleven years of age, and every person other than adults is meant children between the ages of five and eleven years, who shall be charged one-half fare." It was further stipulated in the contract that it was conditioned on the issuance to Kennedy & English of the certificate as requested by them, and on orders of the Railroad Commission permitting appellee McMullen to abandon his route between Lufkin and Huntington, and further: "All of the above agreement is made subject to the approval of the Railroad Commission of Texas and this instrument is executed by the parties in triplicate, original, one copy to be filed with the Commission and one copy retained by parties of the first part and one retained by party of the second part."

The contract contained no express stipulation as to how long it was to run, but was to become effective on September 1, 1928. It was executed on August 17th in triplicate by Kennedy & English, as parties of the first part, and appellee McMullen, as party of the second part. The Railroad Commission made no formal order approving the contract, but it was made with their knowledge and consent and at their suggestion, as shown by the testimony of Mark Marshall, director of the motor transportation division of the Railroad Commission, as follows: "As to whether it is a fact that at the time the contract was entered into between C. S. McMullen and Kennedy & English that both C. S. McMullen and Kennedy & English had an application pending before the Railroad Commission of Texas in which they were seeking a permit to oper-

ate a bus line from Lufkin, Texas, to Beaumont, Texas, I will state that Kennedy & English and C. S. McMullen and others had an application to operate between Lufkin and Beaumont. The hearing had been held and no decision reached up until the time this was worked out. As to whether it was suggested to both Mr. McMullen and Kennedy & English by the Railroad Commission and by me that Mr. McMullen and Kennedy & English work out some sort of agreement between themselves by which Kennedy & English would take care of Mr. McMullen on his operations from Lufkin and Huntington, which Mr. McMullen was then conducting, I will state that members of the Railroad Commission instructed me to get in touch with these parties and have them work out an agreement covering the operation between Lufkin and Huntington. As to whether on August 17th, 1928 or thereabout, C. S. McMullen and Kennedy & English acting in person and by and through their respective counsel made and entered into an agreement by virtue of the terms of which Mr. McMullen was to be paid twenty-five cents per capita for all adult passengers transported over the route involved between Lufkin and Huntington and twelve and one-half cents per capita for all passengers transported thereover from whom a half fare was collected, I will state that at some date before this matter was finally closed up, Kennedy, with his attorney, and McMullen, with his attorney, came to the Capitol to my office; they went into a nearby room and after some hours come back to our place and offered a contract for approval. They stated that they had made an agreement covering the operations between Huntington and Lufkin. I cannot say definitely what part of the fares they were to pay, but to the best of my recollection the amount stated is correct. It is a fact that the parties to the contract advised that they had reached an agreement and requested the approval of the contract by the Railroad Commission and I advised them that the Railroad Commission would not approve the contract but would close the matter up on that basis. As to whether it is a fact that the Railroad Commission would not have granted Kennedy & English a permit to operate between Lufkin and Beaumont but for the fact that they had entered into the aforementioned contract with C. S. McMullen, I will state that at that time no persons had been permitted to operate over another who held a certificate of convenience and public necessity unless they entered into a working agreement with the then certificate holder, and I feel sure that they would not have granted this certificate had they not made such an agreement. As to whether it is a fact that the Railroad Commission granted the permit to Kennedy & English because of said agreement entered into by Kennedy & English and C. S. Mc-

Mullen, as contained in said contract, I will state that it was my understanding that the Railroad Commission would not grant this certificate to Kennedy & English unless an agreement was entered into by the parties affected. As to whether the Railroad Commission was induced to grant Kennedy & English said permit by reason of the execution of the aforementioned contract, I will state that I think the agreement entered into was the reason for granting the certificate to operate between Lufkin and Beaumont."

On this issue, by letter dated the 21st day of January, 1930, addressed to J. J. Collins, attorney for appellee, introduced in evidence without objection, C. V. Terrell, a member of the Railroad Commission, stated: "I would not have recommended granting the permit had not your client made the contract with Kennedy & English and the opposition withdrawn." Though the Railroad Commission declined to approve the contract, the certificate was duly issued to Kennedy & English; and the parties to the contract entered upon its execution on or about September 1, 1928, and Kennedy & English operated their busses under their certificate, paying appellee according to the terms of the contract, from September 1, 1928, to August 1, 1929, when they gave him notice that they would not be bound by the contract any longer but repudiated all its terms and obligations. Notwithstanding this repudiation on their part, they continued to operate their passenger busses over their entire route. A short while after the certificate was originally issued to Kennedy & English, C. T. English sold his interest in the partnership of Kennedy & English to H. E. English, who, with L. Kennedy, continued the operation of the partnership under the original name. After the act of repudiation, appellee McMullen filed with the Railroad Commission his application requesting that the Kennedy & English certificate be canceled. A hearing was had on this application but no judgment entered thereon. On the 22d day of October, 1929, appellee McMullen filed this suit against Kennedy and C. T. and H. E. English upon the above-described contract to recover his damages for its breach.

In addition to pleading the execution of the contract, by his original and supplemental petitions, he pleaded that the parties waived the approval of the Railroad Commission. He also pleaded ratification, etc. To quote from appellants' brief, the defense pleaded by them against appellee McMullen's petition was as follows:

"First. That the Railroad Commission did not approve said contract, as was required in said contract.

"Second. That said contract was void, in that it gave Appellee a perpetual royalty, with no restriction as to time.

"Third. The contract was void as being against public policy.

"Fourth. That said contract was without consideration.

"Other defenses were plead, but the above were the principal defenses urged upon the trial of the case."

The trial was to the court without a jury, with judgment in favor of appellee McMullen against the three defendants jointly for $2,676.88, from which they have regularly appealed to this court.

In support of his judgment, on motion of defendants, the trial court filed his conclusions of fact and law reciting the facts substantially as stated above, embodying in his conclusions of fact a copy of the contract, and further as follows:

"2. The contract was never. formally approved by the Railroad Commission of Texas, but the Commission was aware that such a contract had been entered into between the parties and advised the parties that such a contract was not required under the laws of Texas to be approved by the Railroad Commission of Texas; that it was a private agreement over which the Railroad Commission had no authority or control; that the contract would be valid and binding without the official approval of the Commission.

"3. The Railroad Commission of Texas would never have granted to Kennedy & English a permit to operate a busline between Lufkin and Beaumont in violation of the rights of the plaintiff, C. S. McMullen, had it not known that an agreement had been entered into by the parties whereby McMullen waived his rights in the premises in favor of Kennedy & English, and that Kennedy & English had agreed to pay McMullen the proportion of fares as shown in the contract.

"4. The parties, C. S. McMullen, and Kennedy & English, after being informed that the contract was a private agreement not required under the laws of Texas to be approved by the Railroad Commission, agreed to waive the necessity of approval of the Commission as a condition precedent to the validity of the contract and thereafter continued to act thereunder and in all respects recognized the contract as a valid and subsisting obligation, and treated it as continuing one.

"5. Plaintiff, C. S. McMullen, thereafter fully and completely performed all the matters and things which he obligated himself to perform under said contract.

"6. Defendant, H. E. English, shortly after the execution of the contract and before any amount had become due and owing thereunder by defendants, L. Kennedy and C. T. English, composing the partnership of Kennedy & English, and before any liabilities on the part of the said defendants had accrued under said contract, with full knowledge of the contents and provisions of the said contract voluntarily made application before the Rail-

road Commission to buy, and C. T. English made application to sell to said H. E. English, the interest of C. T. English in the partnership of Kennedy & English and in the motor bus line operation between Lufkin and Beaumont; with the approval of the Railroad Commission H. E. English purchased and took over the interest of C. T. English in the partnership of Kennedy & English to the assets and property of said partnership, and voluntarily assumed all the existing liabilities and obligations of the said partnership, and became a party to the contract sued on, and thereafter received the benefits of said contract and operated thereunder, paying to McMullen, plaintiff herein, various sums of money in accordance with the terms thereof, and in all respects recognized said contract as valid and binding upon him, up until June, 1929, when he claimed that he terminated said contract.

"7. The check made of the number of passengers hauled between Lufkin and Huntington by agents of plaintiff, McMullen, represent the number of passengers carried between both points on 1342 buses out of a total of 1712 buses run during the months of April, through October, 1929.

"8. The number of passengers carried over the Lufkin to Huntington route in proportion to the total number of passengers carried over the whole route from Lufkin to Beaumont is thirty-four per cent.

"9. The number of half fare passengers carried over the Lufkin to Huntington route in proportion to the total number of passengers carried over the Lufkin to Huntington route is four per cent.

"10. The total number of full fare passengers carried between Lufkin and Huntington from September 25, 1928, through April 30, 1930, is 14,659.

"11. The total number of half fare passengers carried between Lufkin and Huntington from September 25, 1928, through April 30, 1930, is 582.

"12. The amount, less all just and lawful offsets, payments and credits, remaining due and unpaid under said contract for the period from September 25, 1928, to April 30, 1930, is $2676.77; which amount is due and owing plaintiff by defendants."

Conclusions of Law.

"1. The Railroad Commission by its conduct and acquiescence in all respects, recognized, ratified and approved said contract.

"2. The parties by their acts and conduct in treating the contract as valid, subsisting and binding thereby waived the necessity of approval of the Railroad Commission as a condition precedent to the validity of the contract; and defendants by their conduct in the premises are estopped to deny the validity of said contract.

"3. The contract as to H. E. English is not within the statutes of frauds by reason of the fact that it might have been performed within a year.

"4. The contract on the part of H. E. English is not within the Statute of Frauds, as being an oral assumption of the debt of another, for the reason that no debts were owing under the contract at the time H. E. English became a party thereto, and the debts subsequently accruing were his debts.

"5. H. E. English, by reason of the fact that he acted under the contract, representing to plaintiff that he considered himself bound by the terms and provisions thereof, and accepted the benefits accruing thereunder, is now estopped to deny that he is a party to said contract and that said contract is valid and binding.

"6. The contract as a matter of law is clear, certain and unambiguous in its terms.

"7. The contract on the part of C. S. McMullen is supported by a valuable consideration, to-wit: The withdrawal of McMullen's application for a permit in favor of Kennedy & English, and the cessation of his operation between Huntington and Lufkin.

"8. The contract does not purport to sell or transfer a franchise covering the operation of a motor bus line and therefore does not constitute an effort on the part of plaintiff C. S. McMullen, to usurp the jurisdiction of the Railroad Commission of Texas.

"9. The contract was not executed by reason of any mutual mistake of fact or of law.

"10. The contract fixes a royalty of twenty-five cents for each full fare passenger and twelve and one-half cents for each half fare passenger carried between the points of Lufkin and Huntington and one-half of the fare paid by passengers carried to points intermediate between Huntington and Lufkin. Such royalty does not constitute an unlawful rebate of fares and is therefore not in violation of the Statutes of Texas.

"11. The contract is not rendered unenforceable by reason of the fact that no time is provided for its termination. Where no limitation is expressed in an agreement neither party can terminate it without consent of the other. The intention of the parties that a contract shall be perpetual and without limit as to duration could not be more properly expressed than by silence as to any time limit and power of revocation. The Court construes said contract as to the time it shall continue to be for the period defendants or their assigns operate said bus line.

"12. The fact that the contract calls for a perpetual royalty is no objection to its validity as between the parties. There is nothing in the law which prohibits parties from entering into a contract providing for perpetual royalties. The rule against perpetu-

ities is concerned wholly with the remote vesting of future interests."

## Opinion.

Propositions 9 to 18, inclusive, are worded in the same language, each of them being as follows: "A finding by the trial court in its findings of fact, must be supported by legal evidence offered upon the trial of the case." Each of these propositions is related to a specific assignment of error against one of the conclusions of fact. Propositions 19 to 29 are also worded in the same language, each of them being as follows: "A conclusion by a trial judge must be based upon the pleadings supported by the legitimate evidence offered upon the trial of the case."

■ Each of these propositions is related to a specific assignment of error against one of the trial court's conclusions of law. These propositions are too general to point out specific error, in that, by the same language appellants seeks to attack each of the conclusions of fact against which they complain and each of the conclusions of law without any statement in the proposition calling the court's attention to the error complained of. Under the following statement of the law, announced by 3 Tex. Jur. 880, discussing the essentials of a proposition, appellants' propositions 9 to 29, inclusive, cannot be reviewed: "It must present something definite and tangible and not a mere abstraction or generalization affirming what is alike applicable to all cases. In other words a proposition points with certainty to some specific error in the trial, and one which consists merely of a general statement of an abstract rule of law will not be considered. * * * A proposition which fails definitely to point out some specific error or ruling or to present some concrete question raised in the case, is too general or indefinite to be considered, provided, of course, it does not present fundamental error." Thus, in Hunt v. Evans (Tex. Civ. App.) 233 S. W. 854, it was held that a proposition was insufficient that merely stated that a finding of fact was not supported by any evidence. The vice in these propositions is made clear by the proposition approved as to form in American Fruit Growers v. Harlan, etc. (Tex. Com. App.) 16 S.W.(2d) 261: "The overwhelming preponderance of the testimony showing that appellee (i. e., American Fruit Growers, Inc.) failed to tender the character of cauliflower it was obligated to tender in the premises, appellant, as a matter of law and justice, was entitled to have the jury verdict set aside, as requested in its motion for a new trial."

But, notwithstanding the insufficiency of these propositions, we have carefully reviewed them and find them without merit and summarily overrule them except as they present the same issues advanced by propositions 1 to 7 urged in support of appellants' special defenses. In fact, under these propositions, every essential element presented by propositions 8 to 29, inclusive, are reviewed. Under the first seven propositions the following contentions are made:

Because on the face of the contract it was executed "subject to the approval of the Railroad Commission," and because it was shown that the Commission entered no order expressly approving the contract, declining so to do on the ground that it was a private agreement over which it had no authority or control, the first contention is that the contract was null and void and unenforceable.

■ The general proposition contended for by appellant has support in the authorities. Thus, in Page v. Payne, 41 Tex. 146, it was said: "It is an elementary principle, if a promise is made upon condition, until the performance of the condition, there is no consideration to support it." And where the consent or approval of a third person is required by the terms of the contract such approval is essential to its validity. 13 C. J. 680. But the provision of the contract relied upon by appellants to defeat its validity must be construed so as to give effect to the intent of the parties. Now on the entire record it is manifest that this condition was inserted in the contract only because the parties thought such approval was essential to its validity. So it can be said, beyond question, that the parties were not contracting to secure the approval of the Railroad Commission but were contracting subject to its approval, believing that such approval was essential to the validity of their contract. But since the approval of the Railroad Commission was not necessary in law to the validity of the contract, the clause requiring its approval became immaterial. Thus, in 10 Tex. Jur. par. 273, it is said: "The subject matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms they use, and when these are ascertained they must prevail over the dry words of the agreement. As an aid to what the parties intended and understood by the words employed, the object in making the agreement may be taken into consideration, although the purpose declared in one clause cannot overcome or alter the whole contract or change its manifest purpose apparent from the parts taken together. It is always of much importance in the interpretation of a contract, upon which doubt arises, to ascertain what was the attitude of the parties to the subject and to find out what was their main purpose."

But the following additional counter propositions advanced by appellee sustain the validity of the contract as against this contention of appellants:

(a) While the Railroad Commission did not give its formal approval to the contract, that is, did not affirmatively approve the contract, under the undisputed facts it did give its approval within the intent of the parties making the contract. Giving full force to the language requiring that the contract be approved by the Railroad Commission, it was clearly the intent of the parties that nothing more was required than that it be executed with its permission.

From the testimony of Mark Marshall, quoted above, and from the following quotation from the letter of Commissioner Terrell referred to above: "I would not have recommended granting the permit had not your client made the contract with Kennedy & English and the opposition withdrawn"— it appears that the contract was made not only with the knowledge and consent of the Railroad Commission, but that appellants were granted their certificate only because the contract was made. The trial court's third conclusion of fact on this issue, given above, has full support in the evidence.

(b) Where a written contract, not required by law to be in writing, provides for the approval of a third party as a condition of its validity, the parties may, by parol, eliminate this condition from the contract. No provision of law required that this contract be in writing. By his fourth conclusion of fact the trial court, as a reasonable inference from the conduct of the parties, found that they agreed to waive the clause requiring the approval of the Railroad Commission. This counter proposition has support in the following statement by 10 Tex. Jur. 358, 359: "A written contract which is not required to be in writing may be modified or amended by a subsequent parole agreement, in which case, as a general rule, the entire contract becomes an oral one."

That waiver may be implied from the acts or conduct of the parties and its consequences is thus stated by the same authority, page 464: "A waiver may be express, or it may be implied from acts or conduct evidencing an intention not to insist on compliance with the provisions of the contract, or inconsistent with a determination to terminate the contract for a breach. The failure to perform conditions precedent may be waived by failure to insist on performance, and departures from the strict terms of the contract, by failing to object at the time, or by accepting what is done by the other party as a full performance."

The second contention is that the contract was void because it fixed no specific time for its duration. After appellants ceased making payments to appellee, they gave him due notice that they had terminated the contract and had repudiated its obligations and would make no further payments to him

thereunder. But after giving this notice, as stated above, they continued the operation of their busses from Lufkin to Beaumont through the town of Huntington, thus usurping the route formerly operated by appellee under his certificate. Under this second contention appellants argue a contract which fixes no time for its specific performance is void and unenforceable. Under the facts of this case the trial court denied this contention of appellants and filed in support of his ruling the eleventh conclusion of law given above. As a general proposition a contract indefinite as to the time of its performance may be terminated by either party by giving notice of his intention to do so. But we know of no case supporting a party to a contract in terminating the same where he continued to hold in his possession and operate for his own use and benefit the entire subject-matter of the contract, to the prejudice of the other party. In this case it was shown beyond controversy, and the court so found, that appellants would not have been granted a certificate to operate busses between Lufkin and Huntington except on the conditions of the contract sued on herein. Having acquired appellee's route, under the terms of the contract, appellants now seek to repudiate it in all its obligations and yet retain and operate the route. To sustain their act of repudiation it was absolutely necessary that they restore appellee to the position he occupied before the execution of the contract, at least, to cease operating his route and put him in position to ask that his certificate be renewed. Giving effect to the proposition that appellants could not thus repudiate the contract, the trial court concluded, as appears from his eleventh conclusion of law, that "as to time, it shall continue to be for the period of defendants or of their assigns operate said bus line." We believe the trial court correctly construed the contract on this issue, at least, it is a construction of which appellants cannot complain. Any time the payment of the consideration becomes a burden too heavy for them to bear they can escape this obligation by returning to appellee his route from Lufkin to Huntington. 6 R. C. L. 895; 10 Tex. Jur. 339; Foster v. Wright (Tex. Civ. App.) 217 S. W. 1090.

Under this proposition appellants also insist that the contract falls within the condemnation of the rule against perpetuities. This rule has no relation to this proposition, but is concerned solely with the remote vesting of future interests. 21 R. C. L. 287.

The third contention is to the effect that the contract was void as being against public policy. As a basis for this proposition appellants say: "The contract attempts to designate who shall have the permit, a matter solely within the jurisdiction of the Railroad Commission." The contract expressly negatives that construction, in that it contains the

following stipulation: "However, this waiver only applies to the parties of the first part herein and to no other applicant."

▮ It was openly and fairly made at the suggestion and with the acquiescence of the Railroad Commission and on the facts stated did not violate public policy. 6 R. C. L. 710; Queen Ins. Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L. R. A. 483.

▮ The fourth contention is that the contract was without consideration. Under this contention it is insisted that the withdrawal by appellee of his application for a certificate did not constitute a valid consideration for the contract. This contention is not sound. Appellee not only held a certificate to operate his busses between Lufkin and Huntington, but also had the legal right to apply for a like certificate to operate his busses over the route now held by appellants. The certificate under which he was operating was very valuable to him. The following authorities sustain the proposition that by abandoning these property rights to appellants, appellee gave a valuable consideration for the contract: Brown v. Jackson (Tex. Civ. App.) 40 S. W. 162; Hannay v. Moody & Co., 31 Tex. Civ. App. 88, 71 S. W. 325; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128.

[15] The fifth contention is that the court erred in not suppressing the depositions of Mark Marshall, on the ground that they were not properly certified to by the officer taking them. The objection to these depositions was by exception, presented for the first time upon the trial of the case, and not by motion, as contemplated by article 3765, R. S. 1925, which is as follows: "When a deposition shall have been filed in the court at least one entire day before the day on which the case is called for trial, no objection to the form thereof, or to the manner of taking the same, shall be heard, unless such objections are in writing and notice thereof is given to the opposite counsel before the trial commences. Such objection shall be made and determined at the first term of the court after the deposition has been filed, and not thereafter." There is no statement in the bill of exceptions to the effect that these depositions had not been on file in the trial court for one day or more next preceding the day upon which the case was tried. Under authority of article 3765, as construed by Houston, E. & W. T. Railway Co. v. Lacy (Tex. Civ. App.) 153 S. W. 414, no error was committed by this ruling of the court.

▮ The sixth contention is that the court erred in overruling appellants' pleas of privilege. Since one of the defendants was a resident of Angelina county when this suit was filed and tried, the plea was properly overruled.

▮ The seventh proposition is advanced only by defendant H. E. English, and is to the effect that since the contract was not signed by him nor assumed by him in writing he was not liable thereon. The substance of this proposition is that the contract, as to H. E. English, was void as being in violation of the statute of frauds. This proposition is based upon appellants' construction of the contract, that it was not to be performed within a period of one year. Under the trial court's construction of the contract, which we have expressly approved, it might have been performed with a year. Such a contract does not violate the statute of frauds (Vernon's Ann. Civ. St. art. 3995). Thomas v. Hammond, 47 Tex. 42.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.