**Affirmed as Modified and Memorandum Opinion filed June 25, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-001083-CV

### A. LEWIS WARD, Appellant

### V.

### EVELYN WASHINGTON, LISA CRITCHLOW, AND STACEY JONES, M.D., Appellees

**On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 960710**

## M E M O R A N D U M   O P I N I O N

In six issues, appellant, A. Lewis Ward, complains about alleged trial court error regarding the jury charge and judgment, and he contends the evidence is legally and factually insufficient to support the jury's findings in favor of

appellees, Evelyn Washington, Lisa Critchlow, and Stacey Jones, M.D.[1] We modify the trial court's judgment and affirm as modified.

## I. BACKGROUND

Ward, acting pro se, sued appellees—a mother and her two daughters, who were his former clients—alleging claims for breach of contract and quantum meruit to recover legal fees for his representation of appellees in a previous case against a homeowner's association. Appellees filed a counterclaim, alleging Ward violated the Texas Deceptive Trade Practices Act ("DTPA").[2] After a jury trial, the trial court entered judgment that (1) Ward take nothing on his claims, (2) appellees recover $103,000 in damages, including $35,000 actual damages and $68,000 additional damages, and (3) appellees recover attorney's fees and costs. The trial court overruled Ward's motion to modify the judgment and motion for new trial. This appeal followed.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE REGARDING EXISTENCE OF A FEE AGREEMENT

In issue four, Ward asserts he conclusively proved the existence of a contract between him and appellees because, as a matter of law, appellees waived the condition precedent provision in their agreement.

The jury answered Jury Question No. 1 as follows:

Did Lewis Ward and Evelyn Washington, Stacey Jones and Lisa Critchlow have an agreement?

Answer "Yes" or "No".

Answer: <u>NO</u>

---

[1] For simplicity, we will use the term "appellees," even when an act was performed by Washington, Critchlow, or Jones individually, unless it is necessary to distinguish the appellees.

[2] *See generally* Tex. Bus. & Com. Code Ann. ch. 17 (West 2011 & Supp. 2012).

## A. Standard of Review and Applicable Law

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* The fact finder is the sole judge of witness credibility and the weight to give their testimony. *Id.* at 819. When a party challenges the legal sufficiency of evidence supporting an adverse finding on which he had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Waiver of a condition precedent may be inferred from a party's conduct. *Id.*

## B. Evidence before the Jury

In 2008, appellees were involved in litigation against a homeowner's association and were represented by attorney E. Howard. At that time, appellees were concerned about Howard's ability to handle the workload of the case, so they asked a friend to recommend other attorneys; the friend recommended Ward.

Appellees and Ward signed a "Contract of Employment" on April 18, 2009 (the "Contract"). The Contract included provisions detailing discovery problems with the case. The Contract provided for a "reduced fee scheme" of $135 per hour

for Ward's time, $100 per hour for an associate's time, $35 for a legal assistant's time, plus a 10% to 40% contingency fee depending on the amount of appellees' recovery. The Contract also estimated the total hourly fees would be $33,095, and costs and expenses would be $14,090. Under the Contract, $10,000 was due at signing, and additional payments were due approximately every fifteen days until July 30, 2009, at which time appellees were to have paid Ward a retainer of $47,185. If Ward's services and expenses exceeded this amount, appellees would be responsible for paying any bills within fifteen days. The Contract also obligated appellees to sign a promissory note for $37,185, payable to Ward, secured by a deed of trust on two parcels of appellees' land. Finally, the Contract contained the following provision entitled "Condition Precedent":

> [Appellees] understand that they cannot have more than one attorney of record and that [Howard] is their present attorney of record. [Appellees] also stipulate that [Howard], by virtue of an October 12, 2007 Attorney Consultation And Fee Contract, retained the right to a 38%/48% contingency fee with respect to [appellees'] recovery in the case. [Appellees] further stipulate that [Ward] has advised them that he does not want to have to litigate a controversy between them and [Howard] and it is in their best interest to obtain now a release by [Howard] of all her interest in the case. Therefore, this agreement shall not become effective unless or until [Howard] is terminated as [appellees'] attorney of record in the case, [Howard] withdraws all of her interest in the case, and [Ward] is provided evidence of such termination and withdrawal of interest.

It is uncontroverted that Howard never released her interest in appellees' case. Appellees testified Ward was supposed to obtain the release. To the contrary, Ward testified appellees assumed this burden. In a May 1, 2009 email to appellees, Ward stated,

> I have received only $4,000.00 of the $10,000.00 retainer; it is now past time for your first installment payment of $5,000.00; and I have

4

not received any documentation of your termination of [Howard] and her withdrawal of her interest in Evelyn's claim.

What should I infer from these matters? It is now only 1 ½ months from the time of the scheduled trial date!

On May 6, 2009, Stacey responded in an email,

[I]n lieu of the [Howard] situation not being solved prior to the contracts/documents that you drew up[,] is it possible to change the dates of when this money is due?

. . .

[W]e will get the other 5K to you by [F]riday, but[,] since we have not heard back from [Howard] and that final clause [referring to the condition-precedent provision] is not met[, I] think it would be best to redo the contract with different due dates.

Stacey testified she sent this email because she knew conditions of the Contract had not been met, rendering it invalid.

On May 21, 2009, Ward filed a motion to substitute into the case as counsel, signed by appellees, which was granted in June 2009. Appellees did not pay the $47,185.00 retainer in installments as described in the Contract. Instead, they paid Ward $4,000 in April 2009, $16,000 in May 2009, $5,834.34 in June 2009, and $7,500 in July 2009, for a total retainer of $33,334.34.

Ward billed appellees for services rendered on a consistent basis. His January 2010 invoice reflected that the retainer amount had been exhausted. In February 2010, Ward sent a demand letter to appellees, reminding them that he had the right to withdraw as their attorney for non-payment of fees. Appellees made payments to Ward of $4,000 in January 2010 and $6,000 in March 2010, but these payments did not fully satisfy Ward's invoices. On March 18, 2010, Ward sent a letter to appellees advising that they had ignored his requests for full payment and he would file a motion to withdraw and sue them if they did not respond with

payment immediately.  In total, over a 12-month period from April 2009 to March 2010, appellees paid Ward $43,334.34.  In April 2010, Ward withdrew as appellees' attorney of record and filed the present suit against them.

## C.  Analysis

The jury found that Ward and appellees did not have an agreement.  Ward argues that it is undisputed appellees signed the Contract, the condition precedent was not met, and each appellee nevertheless signed a motion to substitute Ward as their counsel and paid him for his legal services.  According to Ward, this evidence establishes as a matter of law that appellees waived the condition precedent and entered into an agreement with Ward.

Ward cites *Kennedy v. McMullen*, in which the appellate court affirmed the trial court's finding that the parties to a contract waived a condition precedent, explaining, "The failure to perform conditions precedent may be waived by failure to insist on performance, and departures from the strict terms of the contract, by failing to object at the time, or by accepting what is done by the other party as a full performance."  39 S.W.2d 168, 174 (Tex. Civ. App.—Beaumont 1931, writ ref'd) (citation omitted).  We conclude *Kennedy* is distinguishable because the fact finder expressly found waiver, whereas the fact finder in this case rejected waiver.  For the following reasons, we hold the evidence does not establish waiver as a matter of law.

Appellees' prior attorney, Howard, had retained the right to a 38% to 48% contingency fee with respect to appellees' recovery in their case against the homeowner's association.  Ward's proposed attorney's fee agreement with appellees also retained for Ward the right to a contingency fee (10% to 40% of appellees' total recovery through appeal), in addition to hourly fees and expenses.  The proposed fee agreement specifically states that it "shall not become effective

6

unless or until [Howard] . . . withdraws all of her interest in the case." Howard never did release her interest in appellees' case.

A release by Howard of her contingency fee interest in the case was important for appellees. Howard's 38% to 48% contingent-fee interest coupled with Ward's 10% to 40% contingent-fee interest would mean any recovery by appellees would be decreased by 48% to 88% (plus hourly fee payments and expenses)—something appellees obviously would have wanted to avoid. Stacey's May 6, 2009 email to Ward and her testimony at trial show that appellees were relying on the "condition precedent" provision in the proposed agreement. The release was also in Ward's best interest because he wanted to avoid a fee dispute with Howard in the event of recovery.

Additionally, evidence supports the conclusion that it was imperative Ward begin working on appellees' case because a trial date was looming, but that Howard was not cooperating with appellees or Ward. Accordingly, appellees' decision to substitute Ward as counsel and pay his invoices is not conclusive evidence that the parties decided to waive the condition precedent and proceed under the remaining terms of the Contract. Instead, the jury could have reasonably found that appellees intended to proceed with Ward's representation without an attorney-client agreement, paying his periodic invoices and resolving attorney-client disputes as they arose. *See Killion v. Lanehart*, 154 S.W.3d 183, 189 (Tex. App.—Amarillo 2004, pet. denied) ("Under this record, the jury could reasonably have deduced that there was no meeting of the minds between [client] and [attorney] other than the $5,000 non-refundable retainer and that [attorney] contended he would seek recovery of the remainder of his fee on a *quantum meruit* basis.").

Moreover, for a different reason, the evidence supports the jury's finding under Jury Question No. 1. As stated above, the question asked, "Did Lewis Ward *and Evelyn Washington, Stacey Jones and Lisa Critchlow* have an agreement?" (emphasis added). A reasonable interpretation of this question is that an affirmative answer requires evidence that Ward had a single agreement with all three appellees. However, there is evidence separate from that already mentioned supporting a finding that Lisa and Evelyn did not intentionally waive the condition precedent. *See Benton*, 728 S.W.2d at 37 (explaining waiver means an intentional relinquishment of, or intentional conduct inconsistent with, a known right).

First, documents pertaining to payments made by appellees to Ward reveal that Lisa never made a single payment to Ward after the Contract was signed. Further, during the twelve months that Ward represented appellees, Lisa did not communicate with Ward (or did so very limitedly). This evidence supports a finding that Lisa did not, through her representations or conduct, intentionally waive the condition precedent. Second, Evelyn testified that Ward told her he would "take care of" obtaining a release from Howard. According to Evelyn, she was unaware that Ward had not obtained the release. Obviously, if Evelyn believed Ward had obtained the release, thus fulfilling the condition precedent, she could not have intentionally waived the condition precedent. Thus, the jury could have reasonably answered Jury Question No. 1 in the negative because evidence supports a finding that Lisa and Evelyn did not waive the condition.

We overrule Ward's fourth issue.

### III. JURY CHARGE

In his fifth issue, Ward contends that the trial court erred by refusing to include the following instruction on waiver of condition precedent in the jury charge: "The right to allege condition precedent can be waived. Waiver is an

8

intentional surrender of a known right or intentional conduct inconsistent with claiming the right." Ward argues that, without this instruction, the jury did not "know the circumstances under which the condition precedent could be waived."

To obtain reversal of a judgment based upon an error in the trial court, the appellant must show that error occurred and probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005). We review the entire record to determine whether charge error caused an improper judgment. *Faust v. BNSF Ry. Co.*, 337 S.W.3d 325, 336 (Tex. App.—Fort Worth 2011, pet. denied). Charge error is generally considered harmful if it relates to a contested, critical issue. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010). However, charge error is harmless if we are reasonably certain that the jury was not significantly influenced by the charge error. *Romero*, 166 S.W.3d at 227–28.

We hold that, even if the trial court erred by refusing Ward's requested instruction, such error did not probably cause rendition of an improper judgment. The issue of whether the condition precedent was waived was squarely before the jury from opening statements until closing arguments. Ward explained several times that appellees could have waived the condition precedent by continuing with his representation of them despite not having obtained a release from Howard. In fact, he testified, "[Appellees] knowingly waived any right to ever argue condition precedent given their affirmative participation. They knowingly gave up a known right." Appellees' expert, attorney Henry Robertson, agreed that waiver means "you give up a known right," although he disagreed that appellees waived the condition precedent. During closing argument, Ward argued without objection,

9

Waiver is a knowing -- voluntarily relinquishment of a known right. Through their conduct in wanting me to go ahead, and participating in me going ahead, because time was of the essence, they didn't have to do that. But they did do it, and I was very ready and very willing to do it. They started paying me money. All of their conduct was consistent with, "Hey, we got a contract. We want to get it on and get on down the road."

Appellees in turn argued without objection,

And Mr. Ward wants to tell you, well, because they kept going, they waived that. It wasn't theirs to waive. If you read the contract, it says [Howard] withdraws all of her interest. She has to say, "I don't want that interest." That was part of the agreement.

And who wrote the agreement? Mr. Ward. If somebody writes an agreement and gives it to you and hands it to you and says, "This is our deal," who should it be held against? Do you think the person that didn't write it should be held to it or the person that wrote it and said, "This is what I want as our agreement"? Hold it against the person who wrote it. He said, "This is our agreement." A. Lewis Ward said, "You've got to do these things before anything matters, before there is a contract."

Accordingly, the jury was well aware that waiver of the condition precedent was an issue for their resolution despite the absence of an explicit instruction. In light of the foregoing, we are reasonably certain that the jury would not have found appellees waived the condition precedent had the trial court provided the requested instruction. *See City of Houston v. Proler*, 373 S.W.3d 748, 761 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (assuming trial court's failure to submit instruction was erroneous but holding such error probably did not cause rendition of improper judgment).

We overrule Ward's fifth issue.

## IV. WARD'S CLAIMS FOR DAMAGES AND ATTORNEY'S FEES

In his sixth issue, Ward contends the evidence is legally and factually insufficient to support the jury's findings regarding Ward's damages and attorney's fees.

As stated above, when an appellant complains of the legal sufficiency of evidence supporting an adverse finding on which he had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Francis*, 46 S.W.3d at 241. When a party challenges factual sufficiency relative to an adverse finding on which he had the burden of proof, he must demonstrate that the finding is against the great weight and preponderance of the evidence. *See id.*

We first note that we need not consider sufficiency of evidence supporting the jury's answer "$0" to Jury Question No. 3, regarding Ward's breach-of-contract damages; the jury was instructed to *not* answer Jury Question No. 3 if it had answered Jury Question No. 1 with a "No." As already discussed, the jury's answer to Jury Question No. 1, regarding whether the parties had an agreement, was "NO."

Jury Question No. 4 governed Ward's quantum meruit claim:

What is the reasonable value of compensable work performed and expenses incurred in [appellees'] behalf by [Ward], if any, at the time and place where performed and incurred?

A party performed compensable work if valuable services are rendered or expenses furnished for another party who knowingly accepts and uses them and if the party accepting them would know that the performing party expected to be paid for the work and expenses.

The jury answered "$0."

During closing argument, Ward argued the answer to Jury Question No. 4 was $19,000, which roughly equals the fees and expenses billed by Ward, and unpaid by appellees, for February, March, and April 2010. Apparently, Ward asked for quantum meruit damages for only these months because he had been paid for his fees and expenses through the January 22, 2010 invoice.

Ward argues that, even if the jury could have rationally concluded that a reasonable and necessary fee was less than the amount he sought, an award of "$0" in fees was improper because it is beyond dispute that Ward performed legal services in the underlying case. Ward cites a number of cases in support of this argument.[3] However, the cases cited by Ward are distinguishable—none of them involved a situation like the present case in which an attorney was paid on many prior invoices and seeks payment only on a few remaining unpaid invoices. The jury was not required to view the few unpaid invoices in a vacuum. As discussed fully in the next section of this opinion, the jury reviewed exhibits and heard testimony supporting their conclusion that Ward engaged in false, misleading, or deceptive acts or practices that resulted in a substantial overbilling of appellees. The jury, as the trier of fact, could have reasonably believed appellees' evidence, and therefore could have reasonably concluded that Ward was not entitled to collect one cent of the additional $19,000 he had billed. Because quantum meruit is based in equity, a plaintiff must have "clean hands" to recover, i.e., the plaintiff must not have behaved unfairly. *See Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988). The evidence is legally and factually sufficient to support the jury's finding

---

[3] These cases support the general proposition that a jury may not award $0 in attorney's fees when there is undisputed evidence that at least some amount of attorney's fees were incurred. *See Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009) (per curiam); *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009); *Swallow v. QI, LLC*, No. 14-10-00859-CV, 2012 WL 952246, at *4 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied) (mem. op.).

12

in response to Jury Question No. 4 that the "reasonable" value of Ward's additional services sued for, in light of his total services, was "$0."

Ward additionally complains that the jury's answer to Jury Question No. 5 is not supported by legally and factually sufficient evidence. Jury Question No. 5 asked the jury to determine the reasonable fee for the necessary attorney services of Ward in the present case; the jury answered "$0." In light of the jury's other answers, all against Ward and in favor of appellees, Ward was not entitled to recover attorney's fees for his prosecution or defense of the present case. Accordingly, Ward has suffered no harm as a result of the jury's answer.

We overrule Ward's sixth issue.

## V. LEGAL AND FACTUAL SUFFICIENCY ON DTPA FINDINGS

In issues one and two, Ward asserts the evidence is legally and factually insufficient to support the jury's findings that he engaged in false, misleading, or deceptive acts or practices that were a producing cause of damages in the amount of $35,000 to appellees.

## A. Standard of Review

We have already stated the general standard of review when reviewing legal sufficiency of the evidence. *See City of Keller*, 168 S.W.3d at 819, 822, 827. The difference in the following issues, which pertain to adverse findings on issues for which Ward did not have the burden of proof, is that he must show that "no evidence" supports the findings. *Exxon Corp. v. Emerald Oil Gas Co., L.C.,* 348 S.W.3d 194, 215 (Tex. 2011). There is "no evidence" when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the

13

evidence conclusively establishes the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *London v. London*, 192 S.W.3d 6, 14–15 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). We may not substitute our own judgment for that of the fact finder or pass upon the credibility of witnesses. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 389 S.W.3d 583, 588 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

## B. Analysis

The jury answered Jury Question Nos. 6 and 8 as follows:

QUESTION NO. 6

Did [Ward] engage in any false, misleading, or deceptive acts or practices?

. . .

Answer "Yes" or "No"

Answer: <u>Yes</u>

. . .

[QUESTION NO. 8]

What sum of money, if paid now in cash, would fairly and reasonably compensate the following for their damages, if any, resulting from the conduct you found to have occurred?

Answer: [<u>$35,000</u>]

14

As defined in the charge, "false, misleading, or deceptive act or practice" means "an act or series of acts that have the tendency to deceive an average ordinary person, even though that person may have been ignorant, unthinking, or gullible." This definition is not found in the DTPA's laundry list of deceptive acts. *See* Tex. Bus. & Com. Code Ann. § 17.46(b), (d) (West 2011). Nevertheless, because the record does not reflect that either party objected to this definition, we review the legal sufficiency of the evidence in light of the definition submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Landing Council of Co-Owners v. Durham*, 244 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reviewing sufficiency of evidence in light of definition of "false, misleading, or deceptive act or practice" submitted to jury without objection). Because our review of the sufficiency of the evidence is performed through the lens of a definition not found in the DTPA, we note that our holdings are generally limited to the facts of this case.

The evidence showed that Ward was the only attorney who worked for his law firm, and that his wife worked as his assistant. During Ward's representation of appellees, Leonard Kolanowski, an attorney who had his own law office in Arlington, Texas, worked on the case. Ward paid Kolanowski $45 per hour, but billed appellees $100 per hour for Kolanowski's services, referring to him as an associate attorney. Appellees testified that they met Kolanowski at Ward's office and believed he lived in Houston; he was introduced to them as Ward's associate.

On January 22, 2010, Ward sent appellees an invoice "for work completed through January 15, 2010," indicating that Ward had worked almost 60 hours and Kolanowski worked 100 hours. The invoice also reflected the retainer amount was exhausted. Appellees testified that this greatly-increased billing was a "huge red flag" because it covered a period during the holidays when most business "shuts

15

down." Ward testified that the increased billings during this timeframe were necessary because they were preparing for a February trial date.[4]

**Overbilling**

The primary DTPA claim raised by appellees involved alleged overbilling. Ward concedes in his brief that, if he charged for services not actually performed, and expenses not actually incurred, such billing would amount to a DTPA violation.

Ward's invoices each include the statement, "(for work completed through [certain date])." For example, the September 22, 2009 invoice says, "(for work completed through September 15, 2009)"; the December 23, 2009 invoice says "(for work completed through December 15, 2009)"; and the January 22, 2010 invoice says, "(for work completed through January 15, 2010)." In Ward's January 22, 2010 invoice, he billed $10,000 for Kolanowski's time, stating Kolanowski worked 100 hours when, in fact, Kolanowski worked only 48 hours during this period, resulting in a $5,200 overbilling. Kolanowski testified that he does not know how Ward arrived at the 100 hour number. Ward's wife, who was also his legal assistant, testified the January 22, 2010 invoice included time Kolanowski worked in November 2009, even though the invoices indicated the November time had been billed in the earlier December 23, 2009 invoice; the jury could reasonably have concluded the December 23, 2009 invoice included all work completed through December 15, and the January 22, 2010 invoice covered work completed from December 16 through January 15, meaning appellees were overcharged by $5,200 in the January 22 invoice.[5]

---

[4] The February trial was reset to the summer of 2010. Ward withdrew from representing appellees in April 2010.

[5] This is particularly true because Ward's July 22, 2009 invoice contained the following

16

Additionally, the jury heard evidence that Ward had double-billed for 20 hours of work by an attorney—the same 20 hours, charged at $2,000, was on both the May 26, 2009 invoice and the June 29, 2009 invoice. It was not until appellees' DTPA counterclaim was filed in this lawsuit that Ward acknowledged the double-billing, in August 2010, at which time he credited the $2,000 back to appellees' account.

Further, Ward admitted he filed a complaint against Howard with the State Bar of Texas contrary to appellees' wishes and charged appellees for his work on the complaint. Evelyn testified that she did not know she had been billed for Ward's work on the complaint against Howard. The jury could have reasonably determined that Ward's billing appellees for the State Bar complaint was a deceptive act as defined in the charge, and that this resulted in at least $2,000 in overbilling to appellees.

In sum, based on the foregoing, the jury could have reasonably found Ward engaged in false, misleading, or deceptive acts or practices as defined in the charge, resulting in overbilling of appellees.[6]

Even though Ward had overbilled and appellees had overpaid, Ward demanded additional immediate payments, and appellees resisted. As a result, Ward withdrew as appellees' counsel in the litigation against the homeowner's association, leaving appellees without representation. The jury heard evidence

---

statement: "Associate's work is not included in above but will be included in next month's invoice." Thus, the jury could reasonably find that Ward would warn appellees when an invoice included hours worked in a different time period—a warning his January 22, 2010 invoice did not include.

[6] Appellees presented other evidence to the jury in support of their position that Ward committed additional acts in violation of the DTPA, such as fee-sharing without notice to appellees, deceptive law-firm name, fee churning, additional double billing, and improper expense billing. We do not reach these additional claims.

17

about the significant amount of time it had taken for Ward to become familiar with all the relevant facts and issues involved in the complicated litigation against the homeowner's association, and the jury could have reasonably concluded that a newly hired lawyer would again need to spend a significant amount of time becoming familiar with the case. The jury had also heard testimony from both sides regarding reasonable attorney hourly rates for representation in such litigation.

Clearly, the evidence was sufficient to support the jury's determination that Ward's deceptive conduct was a producing cause of damages to appellees in the amount of $35,000.

We overrule Ward's issues one and two.

## VI. ADDITIONAL DAMAGES

In issue three, Ward asserts there is no legal basis for the trial court's award of $68,000 in additional damages. In response to Jury Question No. 7, the jury found that Ward "knowingly" engaged in false, misleading, or deceptive acts or practices. However, there was no jury question asking about any "additional damages" to be assessed as a result of Ward's "knowing" conduct. Appellees did not request an "additional damages" jury question, and Ward did not object to the absence of such question. The trial court assessed $68,000 in additional damages against Ward, stating in the final judgment:

> It further appearing to the Court that the verdict of the jury was in favor of [appellees], judgment should be rendered for $35,000.00 actual damages and actual damages trebled, in excess of $1,000.00, for a total of $103,000.00 because the jury found [Ward] knowingly engaged in deceptive practice[s], including costs.

18

Ward filed a motion to modify the judgment, complaining that the $68,000 in additional damages was improper because there was no jury finding to support the additional damages awarded; the trial court denied the motion.

Section 17.50(b) of the DTPA provides:

(b) In a suit filed under this section, each consumer who prevails may obtain:

> (1) the amount of economic damages found by the trier of fact. *If the trier of fact finds that the conduct of the defendant was committed knowingly*, the consumer may also recover damages for mental anguish, as found by the trier of fact, and *the trier of fact may award not more than three times the amount of economic damages . . . .*

Tex. Bus. & Com. Code Ann. § 17.50(b) (West 2011) (emphasis added).

Ward argues there is nothing in the statute supporting the trial court's "automatic trebling" interpretation. Ward also contends that the trial court's treble damages award cannot be upheld as a "deemed finding" under Texas Rule of Civil Procedure 279. We agree. In *Martin v. McKee Realtors, Inc.*, the Texas Supreme Court held that the omitted issue on the amount of treble damages under 17.50(b) could not be deemed as found by the trial court under Rule 279—even though the jury had found the defendant committed the deceptive act knowingly—because the omitted issue was an independent ground of recovery. 663 S.W.2d 446, 447–48 (Tex. 1984); *see also J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 40–41 (Tex. App.—Houston [1st Dist.] 1990, no writ); *Town E. Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 810–11 (Tex. App.—Dallas 1987, no writ). It is incumbent upon the plaintiff to request a jury issue on treble damages. *Martin*, 663 S.W.2d at 448. Accordingly, we hold the trial court erred by awarding $68,000 in additional damages against Ward.

We sustain Ward's issue three.

19

## VII. CONCLUSION

We modify the judgment to remove the trial court's award of $68,000 in treble damages, and, as modified, we affirm.


/s/    Margaret Garner Mirabal
        Senior Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.