# Supreme Court of Texas

No. 20-0964

Pura-Flo Corporation,
*Petitioner*,

v.

Donald Clanton,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**PER CURIAM**

This case concerns whether a jury's $50,000 future-damages award for breach of a terminable-at-will rental contract was based on reasonable certainty. The jury found that Pura-Flo breached its indefinite agreement to make monthly rental payments to Donald Clanton and failed to find that Pura-Flo had terminated the contract. The evidence, however, demonstrated that Pura-Flo actively (although unsuccessfully) sought to terminate the contract at its earliest opportunity, and no evidence supported any finding that the contract would endure. Further, no evidence supports the $50,000 amount awarded by the jury. Because both the fact and amount of future

damages lacked reasonable certainty, we reverse the court of appeals' judgment.

Pura-Flo is in the business of renting water coolers. In 1994, Pura-Flo (known at the time as Water Equipment Company) contracted with Misty Vanderzyden to invest in its business. Under the terms of the "Rental Income Agreement," Pura-Flo agreed to "transfer ownership" of fifty "units" (defined in the contract as "income producing water coolers rental customers") already placed "in location" to Vanderzyden for about $50,000. Pura-Flo agreed to continue to service the "equipment," carry insurance, repossess and reinstall any "units" if a rental customer canceled its rental contract, and pay Vanderzyden $1,750 per month in rental income, less a monthly fee.

The contract provided that its initial term would last sixty months, followed by an option to renew for thirty-six months. After this initial ninety-six-month period, the contract included an option to renew "for an indefinite length of time" "[u]pon mutual agreement of both parties." Vanderzyden signed the agreement in March 1994 and exercised the right to renew for thirty-six months in March 1999. She sold the contract to Donald Clanton in June 2002—three months after the initial ninety-six-month period had expired.

After he purchased the contract, Clanton met with Rocky Rasberry, Pura-Flo's president, to discuss the duration of the agreement. Clanton believed he had purchased "a stream of income" in addition to the fifty physical water coolers, which he evidenced to Rasberry by forwarding correspondence from Vanderzyden confirming his purchase of "fifty (50) units along with all future rental income."

Rasberry sent Clanton a contract-renewal letter after their meeting, which congratulated Clanton on his "new venture." Once Clanton signed the contract renewal, Pura-Flo sent him monthly payments without incident for the next fourteen years, until December 2016.

It is unclear why Pura-Flo stopped paying Clanton. Rasberry initially stated that an unrelated investigation at the company revealed, for the first time, that Clanton had been receiving monthly checks for the previous fourteen years due to "an oversight." After Clanton produced a copy of the renewed contract, Rasberry next responded that Pura-Flo halted its monthly payments because Clanton's water coolers had become obsolete and were no longer earning income. Two months later, Rasberry asserted a third explanation in a letter to Clanton—that the contract had already expired when Clanton purchased it from Vanderzyden in 2002—and asked Clanton to "consider the agreement terminated." Clanton sued Pura-Flo for breach of contract.

In the trial court, Clanton argued that the contract was for the sale of "income producing water cooler rental customer[s]"—not just physical water coolers—and that he was therefore owed past damages for the months since Pura-Flo ceased payments. Clanton further argued he was owed future damages for the duration of the contract given Pura-Flo's breach and that he understood the contract to be of indefinite duration. As to the amount of future damages, Clanton testified that he had earned about $9,000 per year under the contract between 2002 and 2016, and he hypothesized that he could replace this lost income stream with a $300,000 certificate of deposit with an average three-percent yield.

The jury found that Pura-Flo breached a valid contract of indefinite duration that had not been terminated. It awarded $19,500 in past losses and future damages of $50,000. Pura-Flo appealed, arguing only the insufficiency of the evidence supporting the future-damages award. 609 S.W.3d 320, 326 (Tex. App.—Houston [14th Dist.] 2020).

A divided court of appeals affirmed. *Id.* at 329. Although the contract was terminable-at-will by either party, the court held that Pura-Flo's cessation of payments to Clanton did not terminate the contract because it continued to possess the contract's subject matter— which the jury found was rental income rather than physical water coolers—and to rent out the water coolers for its own benefit and to Clanton's prejudice. *Id.* at 327-28 (citing *Kennedy v. McMullen*, 39 S.W.2d 168, 174 (Tex. App.—Beaumont 1931, writ ref'd) (holding that a party may not terminate an indefinite contract so long as it continues "to hold in [its] possession and operate for [its] own use and benefit the entire subject-matter of the contract, to the prejudice of the other party")).

As to future damages, the court of appeals held that the evidence established the damages with reasonable certainty. *Id.* at 328-29. Vanderzyden's initial investment in Pura-Flo was $50,000, which she spent to purchase the physical water coolers in 1994. *Id.* at 329. The original rental-information package Pura-Flo provided to Vanderzyden included an investment proposal that drew a comparison between an investment in Pura-Flo's program and a hypothetical $50,000 certificate of deposit with a four-percent yield. *Id.* The investment proposal

4

detailed several possible options after the initial sixty-month term, one of which involved Pura-Flo repurchasing the water coolers for a net gain of $50,259. *Id.* The court of appeals held that, indulging every reasonable inference, this evidence supported the jury's determination that $50,000 was a reasonable amount to compensate Clanton for his future damages. *Id.*

The dissent noted that an open question remains as to whether this contract—or indeed, *any* contract of indefinite duration—could support an award for future damages under any circumstances. *Id.* at 331-32 (Frost, C.J., dissenting). In the dissent's view, the law requires that future damages be calculated with reasonable certainty, which the inherently uncertain duration of terminable-at-will contracts seems to render impossible. *Id.* (Frost, C.J., dissenting). Pura-Flo petitioned this Court for review.

Pura-Flo does not appeal the jury's findings that the contract was indefinite in duration and was not terminated by Pura-Flo's breach. Instead, it makes two arguments to this Court. First, it argues that the evidence does not support the jury's award of future damages. Second, it argues that breach of a contract of indefinite duration may never support an award of future damages. We need not determine here whether terminable-at-will contracts can support future-damages awards in some cases because, whether or not such cases may exist, this is not one of them.

On this record, no reasonable basis exists for a juror to believe the contract would have continued after trial, and thus, no basis exists for reasonable certainty as to either the fact or amount of future damages.

5

*See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 860 (Tex. 2017); *see also Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098 (Tex. 1938) (stating that future losses need not be susceptible to exact calculation, but the amount "must be shown by competent evidence with reasonable certainty" (citation omitted)). As to the fact of future damages, no reasonable basis exists to believe the contract would have continued to produce future income owed to Clanton. Pura-Flo vigorously sought to end its relationship with Clanton at the time of its breach. It stopped paying Clanton, denied knowledge of him as a client, claimed his water coolers could no longer produce income, and asserted that his contract had been void for the entire fourteen-year period since he signed it. Rasberry asked Clanton to "consider the agreement terminated." While the jury found that these actions were insufficient to terminate the contract at the time, *see Kennedy*, 39 S.W.2d at 174, Pura-Flo's numerous attempts and unmistakable intent to terminate the contract were sufficient to ensure that no reasonable juror could have concluded Pura-Flo would not terminate the contract as soon as possible. No countervailing evidence demonstrated any reason Pura-Flo, which had not paid Clanton rent for the past two years and unequivocally communicated its desire to terminate the relationship, would have opted to continue the contract. *See Phillips v. Carlton Energy Gr., LLC*, 475 S.W.3d 265, 279 (Tex. 2015) (emphasizing "the necessity that [a] claim of lost profits not be hypothetical or hopeful but substantial in the circumstances"); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) ("What constitutes reasonably certain evidence of lost profits is a fact intensive determination.").

As to the amount of future damages, the jury awarded one-sixth of the $300,000 Clanton estimated would be required to offset his losses, equivalent to roughly five more years of rental payments to Clanton. Future-damages awards must be ascertained using "objective facts, figures, or data." *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994). Here, no evidence indicated the contract would endure for any length of time, let alone five years after trial. Perhaps, as the court of appeals suggested, the jury sought to award Clanton either the amount Vanderzyden originally paid Pura-Flo to buy the water coolers in 1994 or the amount Pura-Flo's investment proposal claimed the company would pay to repurchase the water coolers after sixty months. *See* 609 S.W.3d at 329. But neither suggested rationale can be the basis for an award of *future* damages, which, as evidenced by its name, is an award for damages that Clanton was reasonably certain to incur in the *future*. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 654-55 (Tex. 1999). Without evidence that the contract would continue in the future, the jury's $50,000 future-damages award has no reasonable basis in evidence and therefore was not reasonably certain as required by law. *See Sw. Battery*, 115 S.W.2d at 1099 (denying recovery "where the facts show that such profits claimed are too uncertain or speculative" and were not "established by proof to that degree of certainty which the law demands" (citation omitted)).

Both the fact and amount of future damages lacked reasonable certainty, and there was thus no evidence supporting the jury's award. The significant contrary evidence indicating Pura-Flo would terminate the contract at its first opportunity was not counterbalanced by any

7

evidence the contract would endure. Thus, without hearing oral argument, TEX. R. APP. P. 59.1, we grant Pura-Flo's petition for review, reverse that portion of the court of appeals' judgment affirming the award of future damages, and render judgment that Clanton take nothing on his claim for future damages. The rest of the trial court's judgment, including the award of $19,500 for past damages, remains intact.

**OPINION DELIVERED:** November 19, 2021